Jerry Wayne SMITH, Plaintiff,

v.

Sally Chandler HALFORD, Warden, et al., Defendants.

Civ. A. No. 82–3051.

United States District Court, D. Kansas.

Aug. 29, 1983.

Jerry Wayne Smith, plaintiff pro se.

Kenneth R. Smith, Asst. Atty. Gen., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is presently before the court upon plaintiff's motion to recuse the undersigned judge, plaintiff's renewed motion for a preliminary injunction, defendants' motion to dismiss, and plaintiff's motion for summary judgment. Having considered each of these motions, the court makes the following findings and order.

Plaintiff's motion to recuse is denied. This motion to recuse was sent to the clerk captioned with the case number of a different case. It was only upon determining the motion in the other case that the court discovered that plaintiff sought recusal in this case as well. Thus, a copy of the motion has been reproduced and filed in this case. Plaintiff has repeatedly been instructed, but continues to neglect, to provide, sufficient copies of materials submitted for filing.

Plaintiff alleges as a basis for his motion to recuse that the undersigned judge has not acted promptly on his motions, in particular, the motion for preliminary relief now pending in this case. The preliminary relief sought by plaintiff has already been denied three times in this action. The press of other court business, combined with the frivolous and frequently confused and repetitive state of plaintiff's materials, as illustrated by the two mentioned incidents, has made it more difficult than usual to move this case in an expeditious manner. For example, plaintiff has filed four supplements or amendments to his original complaint, which contain much repetition but require reading, additional responses or pretrial activity. The delay in expediting this case has been due to repetitive and frivolous motions and letters submitted by plaintiff, and the heavy caseload of prisoner cases, rather than any personal bias.

More importantly, plaintiff's allegations in his affidavit submitted to demonstrate personal bias are nothing more than complaints concerning prior rulings and the handling of plaintiff's cases by this judge. A judge may not be disqualified upon such allegations. *United States v. Goeltz*, 513 F.2d 193 (10th Cir.), *cert. denied* 423 U.S. 830, 96 S.Ct. 51, 46 L.Ed.2d 48 (1975); *Knoll v. Socony Mobil Oil Co.*, 369 F.2d 425 (10th Cir.1966), *cert. denied* 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1967). Plaintiff fails to state the requisite personal and extrajudicial origin for the claimed bias of the undersigned judge. *Davis v. Cities Service Oil Co.*, 420 F.2d 1278 (10th Cir.1970); *United States v. Falcone*, 505 F.2d 478 (3rd Cir.1974), *cert. denied* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975). Thus, the affidavit is clearly insufficient. When an affidavit for recusement is insufficient, it is a judge's duty not to disqualify himself. 28 U.S.C. § 144. Accordingly, the motion for recusal shall be denied.

Plaintiff's motion for preliminary relief is denied for the fourth time. Injury such as loss of wages, which may be fully compensable by an award of money damages after trial, is not irreparable. Thus, plaintiff still fails to make the requisite showing of irreparable harm.

In anticipation of determining defendants' motion to dismiss and plaintiff's motion for summary judgment, the court makes the following findings of fact. These facts are gleaned from the affidavits, exhibits and pleadings submitted by all parties and appear to be undisputed.

1. On February 9, 1982, plaintiff was confined at the Kansas Correctional Institution, Lansing, Kansas [hereinafter KCIL]. There he formed a liaison with another inmate, Milda Sandstrom, and began to cause some strain at the institution. By letters to various staff and legislators and discussions with staff, these two inmates attempted to persuade prison officials to hold in segregation longer than expected another inmate who had attacked Mrs. Sandstrom. They also attempted to have Ten Thousand Dollars ($10,000) worth of personal jewelry sent to Sandstrom by writing a legalistic, threatening letter to its caretaker, and additionally were charged and found guilty of "unauthorized dealing" for attempting to transfer Six Hundred Dollars ($600) from Sandstrom's bank account to Smith's. Furthermore, the two were spending three to five hours together each night ostensibly doing legal work while other inmates complained that much of that time was personal and deprived others of access to research facilities. Upon release from segregation of the inmate who had attacked Sandstrom, Sandstrom, with the help of plaintiff, wrote a letter to Director Halford with copies to the state secretary of corrections and state legislators criticizing the handling of the attack incident and threatening suit. This letter was received by defendant Halford on February 9, 1982.

2. On this date, Sandstrom was informed by Deputy Director Callison that Smith would no longer be allowed to assist her with her legal work. The director and deputy director had discussed this possible action prior to the February 9 letter, which was "more or less the last straw." Plaintiff Smith was also informed of this decision on that date.

3. Plaintiff Smith told Deputy Director Callison and Director Halford that he would not adhere to this directive.

4. Several days later the director and deputy director decided to permit plaintiff to work with Sandstrom one evening a week, but plaintiff refused, stating he would have to have unlimited time outside his working hours to work on Sandstrom's legal problems. Plaintiff was also offered to be allowed to assist Sandstrom one evening a week from 6:30 to 8:30 p.m. and any other inmate all the other evenings, but he told Deputy Director Callison that "under no circumstances" would he accept this offer.

It is disputed whether or not plaintiff was told that he would be transferred to the Kansas State Penitentiary [hereinafter KSP] if he continued to refuse to abide by these restrictions.

5. On March 16, 1982, plaintiff received his yearly institution review wherein it was commented that he was having problems in dealing with staff members because he was continuously contesting rules. Plaintiff disagreed with this assessment and "refused to sign or acknowledge" the report.

6. On April 20, 1982, plaintiff was called to the administration building and was asked by Correctional Officer Maiden how he had made an appointment with a local dentist. Plaintiff, by his own account, told the officer to either check with the appointment nurse or call the dentist himself. Plaintiff claims he was again threatened with being returned to the KSP. Plaintiff was then called into the control room by Deputy Director Callison and Correctional Officer Maiden, where he again refused to explain how he had obtained the dental appointment. That afternoon two incident reports were delivered to plaintiff and he was informed that he was being transferred to the KSP. He was charged with refusing to obey a direct order and insubordination or disrespect to an officer or other employee. As a result of his reaction to these charges, plaintiff was subsequently also charged with threatening or intimidating an officer or other employee. Over his objections, plaintiff was not allowed to return to his quarters and was immediately transported without a prior hearing.

7. Prior to this transfer, plaintiff had been working at "the Zephyr program" for over one year, was learning a trade and was paying taxes and room and board. His participation in this program was terminated without a hearing.

8. On May 5, 1982, at the KSP, plaintiff was afforded a disciplinary hearing on the charge of "threatening or intimidating an officer or employee." According to him, evidence was received, he appeared and testified, and he was found guilty. He was sentenced to one hundred eighty (180) days in segregation; however, because of his institutional record, one hundred twenty (120) days were suspended so that he was required to serve only sixty (60) days. The charge of refusing to obey a direct order

was dismissed. The third charge was heard at a later date. Plaintiff was found guilty of disrespect to an officer and penalized with five (5) days in segregation and a Five Dollar ($5) fine.

9. This statement of the facts does not include allegations which are nothing more than conclusions without any factual support.

On the basis of these facts, plaintiff asserts that disciplinary actions taken against him were violative of due process; that the termination of his participation in the work release program was without sufficient due process; that defendants violated his and other inmates' rights of access to the courts and to due process and equal protection by restricting his contact with and ability to assist Sandstrom and other inmates with their legal problems; that inmates at KCIL are not provided with adequate access to the courts; and that his transfer to the KSP was retaliatory and without sufficient due process. The court is asked to declare defendants' acts unconstitutional, to enjoin further violation of plaintiff's constitutional rights, to compel his return to KCIL and reinstatement to the work release program at Zephyr, and to award money damages.

Having thoroughly reviewed all pleadings, motions, affidavits, exhibits and other materials filed in this case for the purpose of determining defendants' and plaintiff's dispository motions, the court finds that all of plaintiff's claims are subject to summary dismissal for the reasons set forth hereinafter. Because the court has not limited its consideration to the pleadings, defendants' motion to dismiss is hereby construed as a motion for summary judgment.

■ Defendants' motion for summary dismissal should be granted with respect to plaintiff's claim that disciplinary action taken against him was without due process. Plaintiff's conclusional claims that there was insufficient evidence of guilt, that he was denied witnesses, and that he was not allowed to submit evidence from another hearing are insufficient to state a claim of denial of due process. Plaintiff does not state that he made a request for any partic-

ular witness which was disallowed, nor does he explain how he was prejudiced by the absence of a specific witness. He refers to only one possible witness by name, but he also alleges that he stipulated as to her probable testimony. Furthermore, plaintiff's own account indicates that there was evidence of his misconduct consisting of the testimony of prison personnel who had witnessed the infractions. The sixty-day segregation penalty assessed against plaintiff was within the cited penalty provision, and thus it was not excessive. Finally, plaintiff does not describe what evidence he was prevented from presenting and how he was prejudiced as a result. His other allegations concerning the disciplinary hearings are completely frivolous and conclusional. No facts indicating a federal constitutional violation are alleged. See *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Plaintiff's claim that his due process rights were violated because he was transferred and removed from his work assignment without a prior hearing should also be summarily dismissed. The due process clause does not entitle a state prisoner to a fact-finding hearing when he is transferred from one detention facility to another, even when the other prison is more restrictive of liberty; and such prisoner is entitled to due process protections only when state law itself conditions such transfers on the occurrence of misconduct or other specified events. *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); see also *Randle v. Romero,* 610 F.2d 702 (10th Cir.1979). Thus, plaintiff may recover on his claim only upon a showing that a right has been created by state law or prison regulation for a prisoner at KCIL to remain at that institution and to remain in a particular work release program absent a finding of infractions of the prison rules or similar occurrences.

This court has examined the statutes and regulations cited by plaintiff in support of this claim. These provisions are nothing more than housekeeping or procedural rules governing the administration of inmate transfers or rules conferring authority upon prison officials which do not condition such a transfer on the occurrence of some misconduct or other event. Such rules cannot of themselves serve as the basis for a separate protected liberty interest. See *Gorham v. Hutto,* 667 F.2d 1146 (4th Cir.1981); *Cofone v. Manson,* 594 F.2d 934 (2nd Cir.1979); *Delp v. Harris,* 503 F.Supp. 101 (E.D.Tenn. 1980), aff'd. 698 F.2d 1218 (6th Cir.1982). None of these provisions created a right or expectation in plaintiff to remain at KCIL or to remain in the Zephyr work program absent certain specified events. The only provision deserving of additional comment is Administrative Regulation 44–8–105, which provides when an administrator shall release an inmate from participation in the work release program. However, it does not state that an inmate cannot be released except upon the occurrence of the conditions set forth therein. It certainly cannot be read to have created a right in plaintiff to participate in one particular work release program.

Contrary to plaintiff's contentions, under Kansas law prison officials are given the authority at any time to transfer an inmate for any reason or no reason at all. See K.S.A. §§ 75–5206, 5210(b). Inevitably, when a prisoner is transferred to another institution he is terminated from the programs at the transferee institution. Since a prisoner has no protected interest in remaining at a particular institution or to participate in a particular rehabilitation program, he can hardly argue that his termination from a particular program which results from his transfer violates due process. The court concludes, and so finds, that plaintiff's federal constitutional rights to due process were not violated by his transfer from KCIL or the termination of his participation in the Zephyr program without a prior hearing.

Plaintiff's major claims concern an alleged denial of the fundamental constitutional right of access to the courts. The right of court access is not specifically men-

tioned in the United States Constitution. However, it has been based upon the first and fourteenth amendment rights to petition all branches of government for a redress of grievances; on the fifth and fourteenth amendment guarantees of due process and equal protection of the law; and on the sixth and fourteenth amendment rights to counsel. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell, supra; Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); see also *Cochran v. Kansas,* 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942). It is well-settled that prison inmates have a constitutional right to meaningful access to the courts which a state may not abridge or impair. *Bounds v. Smith, supra; Ex Parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *Wolff v. McDonnell, supra,* 418 U.S. at 577–80, 94 S.Ct. at 2985–2987.

■ Plaintiff's claim that his personal right of access to the courts is being denied is utterly frivolous. The sheer number of pleadings, motions and letters, many containing legal citations, submitted by plaintiff to this court in connection with this case and *Smith v. Atkins,* 540 F.Supp. 756 (D.Kan.1982), conclusively establishes that he has not been deprived of access to the courts. His conclusional statement to the contrary fails to state a sufficient claim. He has not alleged that any of his many filings have been stricken or that any of his court cases have been dismissed or otherwise prejudiced as a result of a denial of his right of access. See *Twyman v. Crisp,* 584 F.2d 352 (10th Cir.1978). Accordingly, the court finds plaintiff's claim that his right of access to the courts has been abridged should be summarily dismissed.

Plaintiff also claims that defendants' actions have denied the rights of access to the courts of inmate Sandstrom and other unnamed inmates at KCIL whom he has provided with legal assistance. He contends that he has standing to assert the access rights of these inmates under *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). See *Rhodes v. Robinson,* 612 F.2d 766 (3rd Cir.1979); *Wade v. Kane,* 448 F.Supp. 678 (E.D.Pa.1978), *aff'd.* 591 F.2d 1338 (3rd Cir.1979).

The issue of standing was not discussed in *Johnson v. Avery,* and the interests of justice, in particular the standing and the "case or controversy" doctrines, would not be well-served by extending the standing implied therein beyond the facts of that case. See *United States ex rel. Silverman v. Commonwealth of Pennsylvania,* 527 F.Supp. 742 (W.D.Pa.1981), *aff'd.* 707 F.2d 1395, 1397 (3rd Cir.1983).

■ The instant action is readily distinguishable from *Johnson v. Avery.* In the latter case, it was accepted that no one other than the petitioner could assert the violations of the inmates' rights. See *Bounds v. Smith, supra,* 430 U.S. at 823, 97 S.Ct. at 1495. Here, plaintiff has not alleged or shown that he is the only person who can assert the rights of KCIL inmates. See *Buise v. Hudkins,* 584 F.2d 223 (7th Cir.1978); *Green v. Wyrick,* 428 F.Supp. 732 (W.D.Mo.1976). Plaintiff merely alleges, in a conclusional fashion, that the legal services provided at KCIL were inadequate to meet all the inmates' needs and that inmates were denied meaningful access. However, he does not present facts indicating an actual denial of access to Sandstrom or any other KCIL inmate in that he does not allege that any specific case or pleading filed by a certain inmate has been stricken or otherwise prejudiced due to the lack of his assistance. See *Twyman v. Crisp, supra.* The many affidavits submitted by plaintiff establish that he has assisted other KCIL inmates, but not that they have been prejudiced by the lack of his assistance. The court takes judicial notice from a habeas corpus action filed in this court on behalf of plaintiff's most regular client, Milda Sandstrom, that she had the assistance of licensed attorneys throughout her state criminal trial and appellate proceedings, as well as in the habeas action before this court. Moreover, plaintiff cites a prison regulation which generally permits mutual inmate assistance at KCIL, and the affidavits sub-

mitted by him reveal that other inmate writ-writers have provided legal assistance at KCIL.

Unlike the prevailing circumstances in 1968 when *Johnson v. Avery* was decided, KCIL inmates today are provided with significant assistance from persons trained in the law by way of the Kansas Legal Services for Prisoners, Inc. In addition, a law library is provided and inmates are generally permitted to assist one another. *Storseth v. Spellman*, 654 F.2d 1349 (9th Cir. 1981).

Furthermore, the one inmate whom plaintiff actually names as being prejudiced by the lack of his assistance, Sandstrom, is not alleged to be ignorant, unskilled or illiterate so that she is incapable of using the law library herself. See *Wetmore v. Fields*, 458 F.Supp. 1131 (W.D.Wis.1978); see also *Bounds v. Smith, supra*, 430 U.S. at 822–23, 97 S.Ct. at 1495–96. To the contrary, Sandstrom's own affidavit and letters presented in this case indicate that she is an education clerk at the prison, has tutored other inmates, and is quite capable of presenting legible, articulate arguments.

In *Johnson v. Avery* the petitioner was permitted to challenge an unconstitutional regulation which prohibited all inmate mutual assistance because he was being punished for violating that regulation. He was disciplined solely for assisting other inmates in preparing habeas corpus petitions. In the instant case, the disciplinary reports against plaintiff do not cite such an impermissible charge, but were expressly issued on the basis of valid rules infractions unrelated to legal activities and involving confrontations with prison officials. See *Buise v. Hudkins, supra.* Moreover, the directive which plaintiff challenges restricted his writ-writing activities only, rather than banning any other inmate mutual assistance, and such is not shown to be unconstitutional. The court concludes that the facts of the instant case vary significantly from those of *Johnson v. Avery,* so that plaintiff should not be granted standing in this case on the basis of that authority.

Plaintiff does not show that he is entitled under traditional principles of standing to raise the claim that inmates other than himself at KCIL are being denied access to the courts. The rules of standing serve as "prudential limitations on the courts' role in resolving disputes involving third parties' legal rights or interests." *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); see also *McGowan v. Maryland,* 366 U.S. 420, 429–30, 81 S.Ct. 1101, 1106–1107, 6 L.Ed.2d 393 (1961). Plaintiff does not meet the threshold requirements of such rules that to have standing a complainant must clearly allege facts demonstrating that he has such a personal stake in the outcome of the controversy as to warrant his invocation of judicial resolution of the alleged dispute and to justify exercise of the court's remedial powers on his behalf. *Id.* 422 U.S. at 498–99, 95 S.Ct. at 2204–2205, *citing Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In *Johnson v. Avery* petitioner had a personal stake in the outcome of the ruling on the constitutionality of the pertinent regulation as he was being punished for its violation. Here, plaintiff has no personal stake in, and therefore has no standing to litigate, the resolution of the question of whether or not inmates other than himself at KCIL are afforded meaningful access to the courts. See *McDonald v. Hall,* 610 F.2d 16 (1st Cir.1979); *United States ex rel. Ratchford v. Mazurkiewicz,* 451 F.Supp. 671 (E.D.Pa.1978); *Graham v. Hutto,* 437 F.Supp. 118 (E.D.Va.1977); aff'd. 571 F.2d 575 (4th Cir.1978); but *cf., Rhodes v. Robinson, supra.*

The court's remedial powers for which plaintiff prays would not remedy a denial of access to inmates at KCIL. Granting money damages to plaintiff obviously would not vindicate their access rights. Nor would transferring plaintiff back to KCIL assure them of adequate access if, as plaintiff claims, the law library there is inadequate.

The controversy of whether a particular, literate inmate is being denied access to the courts in a prison where trained legal advisers and a law library are available and writ writers generally are permitted to function

should be decided in an action brought by the inmate whose access is directly affected, not by a writ writer whose access clearly has not been impaired and who is incarcerated at another institution. If Sandstrom or any other inmate at KCIL is not being provided with meaningful access to the courts, that right may be fully vindicated in an action filed by them personally.

■ Plaintiff makes the corollary argument that he should be allowed to litigate the access rights of KCIL inmates in this action because he has a right to provide legal assistance derivative from their right of access. *Vaughn v. Trotter,* 516 F.Supp. 886 (M.D.Tenn.1980). Nowhere in the majority opinion in *Johnson v. Avery* was it suggested that there is a constitutional right to be a jailhouse lawyer derivative from the access rights of fellow inmates. On the other hand, Justice White, in his dissenting opinion, states that it is the rights of the potential prisoner client, not the would-be jailhouse lawyer, which most need protecting. *Id.* 393 U.S. at 502, 89 S.Ct. at 757. This court is of the opinion that declaring a broad-sounding derivative right is unnecessary in order to protect the fundamental personal right of access to the courts.

The mutual assistance aspect of an inmate's constitutional right of access is adequately protected by the extant rule that no inmate may be arbitrarily punished. Punishment of a jailhouse lawyer for acceptable behavior would be arbitrary, and in prisons where mutual inmate assistance is permitted as a part of the State's overall plan to provide meaningful access, the giving of assistance would be acceptable behavior. Thus, this court finds no basis in supreme court opinions or necessity for the holding in *Vaughn v. Trotter, supra,* that the "Supreme Court has created a derivative right, vested in jailhouse lawyers, to provide legal assistance to others." This court concludes, and so finds, that plaintiff has no constitutional right to be a writ writer. See *Green v. Wyrick, supra.*

■ Even if this court were to assess plaintiff's claim under the derivative right theory, we would hold that defendants are entitled to judgment as a matter of law. It is beyond question that the legal research activities of inmates, as with all constitutionally-protected activities, are subject to reasonable regulation or restrictions. *Johnson v. Avery, supra; McCarty v. Woodson,* 465 F.2d 822 (10th Cir.1972); *Hamrick v. Raines,* 376 F.Supp. 1273 (D.Kan.1974). The provision of inmate legal services cannot be abused. See *Storseth v. Spellman, supra; Green v. Wyrick, supra; Henderson v. Ricketts,* 499 F.Supp. 1066 (D.Colo.1980). Thus, it is well-settled that time, place and manner restrictions may be placed upon the preparation of legal documents, including the giving and receiving of inmate assistance. *Johnson v. Avery, supra; Storseth v. Spellman, supra; Twyman v. Crisp, supra, and cases cited therein; Silple v. Maynard,* No. 81–2357 (10th Cir., *unpublished, 3/09/82*). It should be equally obvious that an inmate has no right to refuse to abide by reasonable restrictions placed upon his writ-writing activities. Otherwise, the restrictions are of no force or effect. Prison officials cannot be shackled by an inmate's writ-writing activities. An inmate is not immunized from transfer or other administrative sanction simply because he is a jailhouse lawyer. *Laaman v. Perrin,* 435 F.Supp. 319 (D.N.H.1977).

This court finds, given the behavior of inmates Smith and Sandstrom at KCIL described in the first and third factual findings herein, that the directive attempting to restrict the time during which Smith could assist Sandstrom was imminently reasonable. The court further finds from plaintiff's own allegations that he vehemently and unmistakably refused to abide by the restrictions placed upon his writ-writing activities by the director of the prison. Even if plaintiff had a derivative right to provide legal assistance, that right clearly was not, as he suggests, "unfettered;" and his refusal to assist inmates in compliance with prison directives might reasonably have supported administrative or even disciplinary action against him rather than any claim of

a federal constitutional violation of his rights by defendants.

▮ Moreover, since a prisoner has no right to assistance by a particular writ writer, it follows that a writ writer would have no right to assist a particular prisoner. See *Fair v. Givan,* 509 F.Supp. 1086 (N.D.Ind. 1981); *Storseth v. Spellman, supra.* Even though plaintiff frequently refers to inmates in general at KCIL, the termination of his assistance to Sandstrom is clearly at the heart of this controversy. Neither inmate had the right to demand that plaintiff be allowed to assist Sandstrom.

In *Bounds v. Smith, supra,* 430 U.S. at 828, 97 S.Ct. at 1498, the United States Supreme Court held that "the fundamental constitutional right of access requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers...." However, the ruling in *Bounds* does not hold that inmates have an absolute right to any particular type of legal assistance. *Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980); *Storseth v. Spellman, supra.* The states are still free to choose among a variety of methods or combinations thereof in meeting their constitutional obligation. *Id.* Therefore, Sandstrom and other inmates could not claim plaintiff as their only acceptable source of access and plaintiff cannot insist that he be a part of the State's provision of legal access.

Furthermore, the court notes that an inmate's right of access involves his or her right to present legitimate grievances to the courts. It does not include a right to prepare harassing letters which threaten suit in order to intimidate and denigrate prison officials. Licensed attorneys are not permitted by the Legal Code of Ethics to write letters threatening to bring a lawsuit, so the same conduct by prison writ writers can hardly be thought of as a constitutionally-protected activity.

The court concludes that plaintiff had no derivative right to assist Sandstrom or other inmates at KCIL; but that if he were held to have such a right, it was not unfettered, and does not entitle him to relief under the facts of this case.

▮ Plaintiff also claims that defendants' restriction of his contact with Sandstrom and other inmates was violative of equal protection guarantees. He bases this claim upon the prison regulation which permits inmates to assist one another with legal matters. Kansas Administrative Regulation 44–10–702. The permissive language of this regulation created no substantive right in plaintiff to provide legal assistance absent the occurrence of certain specified events. Furthermore, as the court has previously stated, an inmate may be restricted from even a constitutionally-protected activity if he abuses that activity. See *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982).

▮ One of plaintiff's most viable legal contentions is that he cannot constitutionally be disciplined solely for providing legal assistance to other inmates. However, this claim has no factual substance whatsoever. Rather, the pleadings and materials filed in this case clearly demonstrate that plaintiff was not disciplined solely for giving legal assistance. He was not even disciplined for refusing to abide by reasonable restrictions placed upon his writ-writing activities with one particular inmate, as this court has suggested he might have been. Instead, he was disciplined (that is, he received disciplinary reports, hearings and punishment such as segregation, loss of good time or a fine) for his insubordination and threatening actions toward staff resulting from discussions concerning a dental appointment and his impending transfer. Thus, the court concludes that plaintiff's claim that he was disciplined solely for providing legal assistance is without factual support and should be summarily dismissed.

Plaintiff has had more than ample opportunity to state sufficient facts in support of all the claims discussed above, and, in fact, has submitted four wordy, repetitious supplemental complaints, not to mention numerous letters, affidavits, motions, legal memoranda and narrative factual accounts. Despite this opportunity, he has failed to factually support these claims. A court's

duty to be less stringent with a *pro se* complaint does not require the court to conjure up unpleaded allegations. *McDonald v. Hall, supra.* This is particularly true where, as here, the litigant professes to have competently handled legal matters for many years. The inadequacy of plaintiff's allegations is even more apparent when the entire record before the court is scrutinized, since it then becomes clear that defendants are entitled to judgment as a matter of law on the undisputed facts. Only plaintiff's final claim impels this court to grant plaintiff one more opportunity to avoid summary dismissal of this action. Plaintiff shall be granted twenty (20) days from the date this order is filed in which to refute any of the findings of fact of the court enumerated herein and to offer any *additional* factual support he may have for his claims, particularly that he was subjected to a retaliatory transfer. Repetitive materials or allegations will not be given weight or discussed further by the court in its final determination of whether or not to summarily dispose of this action.

▆▆▆ The final claim to be discussed by the court is plaintiff's contention that he was transferred from KCIL to Lansing in retaliation for his writ-writing activities. Until "substantial evidence" demonstrates that prison officials have exaggerated their response to legitimate considerations [*Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974)], this court must presume that an administrative transfer is made for legitimate penological concerns. See *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Therefore, plaintiff must establish by substantial evidence that the real motivating factor for his transfer was his writ-writing activities. *Laaman v. Perrin, supra;* see also *Hendrix v. Faulkner,* 525 F.Supp. 435 (N.D.Ind.1981). Only when plaintiff meets his burden will defendants be required to justify their abridgement of his fundamental constitutional right by establishing a substantial, legitimate need for the transfer. *Id.* Plaintiff has described no substantial evidence which would satisfy his burden of establishing that he would not have been transferred but for his writ-writing activities. In order to defeat defendants' motion for summary judgment on this claim, plaintiff must detail the evidence he possesses that his transfer was for no reason other than his legal activities. See *McDonald v. Hall, supra,* 610 F.2d at 18–19.

Defendants deny that the transfer was disciplinary in nature; and the record presented thus far establishes that plaintiff had refused to abide by institutional regulations, had participated in impermissible activities with inmate Sandstrom, had refused to directly answer a simple question about a dental appointment, had received misconduct reports for confrontations with staff, and had acted in a belligerent and disrespectful manner to prison personnel at KCIL.

It is now incumbent upon plaintiff to oppose defendants' motion for summary judgment by submitting materials, in accordance with the foregoing discussion, setting forth specific facts which demonstrate the existence of genuine issues of material fact for trial. Federal Rule of Civil Procedure 56; Title 28, United States Code; *Stanley v. Continental Oil Co.,* 536 F.2d 914 (10th Cir.1976); *Stevens v. Barnard,* 512 F.2d 876 (10th Cir.1975).

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion to recuse, renewed motion for a preliminary injunction and motion for summary judgment are hereby denied.

IT IS FURTHER ORDERED that defendants' motion to dismiss is hereby treated as a motion for summary judgment, that plaintiff is hereby granted twenty (20) days from the date this order is filed in which to oppose such motion, and that the file then be returned to the undersigned judge for such further action as may be appropriate.