**Ricky Flamingo BROWN, Plaintiff,**

v.

**Wayne CARPENTER, et al., Defendants.**

No. 95–2260–M1/A.

United States District Court,
W.D. Tennessee,
Western Division.

May 9, 1995.

Ricky Flamingo Brown, pro se.

## ORDER OF DISMISSAL

McCALLA, District Judge.

Plaintiff, Ricky Flamingo Brown, an inmate at the West Tennessee High Security Facility (WTHSF) in Henning, Tennessee, has filed a complaint under 42 U.S.C. § 1983.

Plaintiff sues WTHSF associate warden Wayne Carpenter, food service manager Larry Seay, disciplinary board chairman Joel Smith, and board members Diane McDaniel, Bobby Herron, and Peggy Holcomb. This complaint arises out of Brown's refusal to abide by WTHSF procedures and his announced intention to abuse the WTHSF and Tennessee Department of Corrections (TDOC) grievance procedure by acting as a focal point for complaints about the administration. Plaintiff's affidavit in support of his petition states:

> "I received numerous complaints in my office reference to Larry Seay and the improper handling of food, and the sexual harassment of the female in the kitchen, and the bring of large amount of cocaine through this prison ... I set up in my cell to receive complaints such as this I am well within bound to redress the official behavior."

Complaint at 3. In the process of filing one such grievance, plaintiff accused Seay and one of his assistant food service managers of various felonies, including the above crimes. In response to the grievance, Seay denied any wrongdoing. When a grievance board conducted a hearing and plaintiff could produce no proof of any wrongdoing by Seay or any other prison staff member, Seay charged plaintiff with the disciplinary offense of disrespect. The disciplinary board heard Seay's testimony and convicted plaintiff of this offense and imposed a penalty of ten days punitive segregation. Brown alleges that his due process rights have been violated, that he is the victim of retaliation, and that he has a right to investigate the activities of the prison staff. He demands damages and access to information relating to lawsuits filed against WTHSF officials.

■ Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. *See Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (disciplinary board members protected by qualified immunity); *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager); *Ponte v. Real,* 471 U.S. 491, 495–99, 105 S.Ct. 2192, 2195–97, 85 L.Ed.2d 553 (1985) (disciplinary board need not make contemporaneous record of reasons live witnesses for inmate not allowed); *Baxter v. Palmigiano,* 425 U.S. 308, 319–323, 96 S.Ct. 1551, 1558–60, 47 L.Ed.2d 810 (1976) (disciplinary board may draw adverse inference from inmate's silence; inmate has no right to cross-examination); *Wolff v. McDonnell,* 418 U.S. 539, 564–71, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974) (defining scope of due process application to prison disciplinary hearings); *Wolfel v. Morris,* 972 F.2d 712 (6th Cir.1992); *Hensley v. Wilson,* 850 F.2d 269 (6th Cir.1988); *Hudson v. Edmonson,* 848 F.2d 682 (6th Cir.1988); *Turney v. Scroggy,* 831 F.2d 135 (6th Cir.1987).

■ In general,

"[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."

*Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Thus there is no federal constitutional right to be held in a prison system's general population, or in a particular part of a prison. *See Hewitt v. Helms,* 459 U.S. 460, 468–69, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *Wolff v. McDonnell,* 418 U.S. at 556–57, 94 S.Ct. at 2974–75. Nevertheless, "the repeated use of explicitly mandatory language

in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Hewitt v. Helms,* 459 U.S. at 472, 103 S.Ct. at 871.

■ Tennessee prison regulations have been interpreted to create a liberty interest in inmates not being confined to punitive or administrative segregation without due process protections. *Franklin v. Aycock,* 795 F.2d 1253, 1260 (6th Cir.1986) (disciplinary segregation); *Bills v. Henderson,* 631 F.2d 1287, 1294 (6th Cir.1980). Due process thus requires that a Tennessee prison inmate who is confined to punitive segregation or deprived of sentence credits be provided a disciplinary hearing in compliance with *Wolff* and *Hill.*

■ Although state laws or regulations create any liberty interest that a TDOC inmate enjoys in connection with confinement to disciplinary segregation, the scope of "the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law." *Black v. Parke,* 4 F.3d 442, 447 (6th Cir.1993). Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation. *Hewitt,* 459 U.S. at 460–61, 103 S.Ct. at 865–66; *Spruytte v. Walters,* 753 F.2d 498, 508 (6th Cir.1985) (violation of state law does not by itself constitute deprivation of due process). Even if the procedures are phrased in mandatory language, they do not create a substantive liberty interest. Thus plaintiff had no due process right to each procedure set forth in TDOC regulations, but only to those enunciated by *Wolff* and its progeny.

■ Plaintiff has no right protecting him from being charged with a disciplinary offense. An inmate's due process right with respect to the *filing* of a disciplinary report is subsumed within the procedures enunciated in *Wolff.* If these procedures are followed, the prisoner's due process right is protected, regardless of the truth of the initial report. *See, e.g., Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986); *Sweeney v. Norris,* 1988 WL 3478 *1 (6th Cir. January 19, 1988) (unpublished decision following

*Freeman* ). *See also Wolfel v. Morris,* 972 F.2d 712, 716 (6th Cir.1992) (filing of report did not violate inmate's due process rights because he was acquitted of the charge).

■ A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision. *Superintendent v. Hill,* 472 U.S. at 455, 105 S.Ct. at 2773–74.

> Although the evidence in this case might be characterized as meager, and there was no direct evidence ... the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Id.,* 472 U.S. at 457, 105 S.Ct. at 2775. The court is not permitted to re-weigh the evidence presented to the board. *Id.* at 455, 105 S.Ct. at 2773–74. Prison officials' determinations in disciplinary cases must be made quickly in a highly charged atmosphere, *id.* at 456, 105 S.Ct. at 2774, and the "Constitution does not require evidence that precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457, 105 S.Ct. at 2775. Furthermore, and of particular significance in this case, a court may not reexamine a disciplinary board's credibility choices in weighing the evidence at a hearing. *See Turney v. Scroggy,* 831 F.2d at 140.

■ Plaintiff admits that Seay presented evidence at the hearing regarding the grievances and also admits that he filed the grievances referred to in the written disciplinary charge. The disciplinary board was entitled to rely on this evidence, including Seay's statement. *See Hill,* 472 U.S. at 456, 105 S.Ct. at 2774. This more than satisfied the "some evidence" test of *Hill.*

Plaintiff's argument that his grievances were not evidence of the offense of disrespect is utterly frivolous. The accusations leveled by plaintiff were without basis and represented a direct challenge to the authority of the prison administration.

"[T]he core functions of prison administration [are] maintaining safety and internal security." *Turner v. Safley,* 482 U.S. 78, 92, 107 S.Ct. 2254, 2263, 96 L.Ed.2d 64 (1987).

*See also Thornburgh v. Abbott,* 490 U.S. 401, 413–15, 109 S.Ct. 1874, 1882, 104 L.Ed.2d 459 (1989) (protecting prison security is central to all other correctional goals); *Meadows v. Hopkins,* 713 F.2d 206, 209–10 (6th Cir.1983). Inmates and prison officials exist in a constant state of tension over who is to control the prison. Prisons present an "ever-present potential for violent confrontation." *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting *Jones v. No. Car. Prisoner's Labor Union, Inc.,* 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977)). *See also Wolff v. McDonnell,* 418 U.S. 539, 561–62, 94 S.Ct. 2963, 2977–78, 41 L.Ed.2d 935 (1974) (prisons are populated by violent offenders, causing unremitting tension among inmates and between inmates and guards). All of these concerns are implicated by the type of abusive grievance filed by this inmate.

█ Contrary to plaintiff's imagination, he does not acquire any right to special privileges by labelling himself as an inmate advocate. Indeed, the First Amendment right of access to the courts, enunciated in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), does not guarantee any constitutional right to provide legal assistance to or to represent other inmates or to act in any representative capacity.[1] *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989). *See also Gassler v. Rayl,* 862 F.2d 706, 707–08 (8th Cir.1988); *Flittie v. Solem,* 827 F.2d 276, 279–80 (8th Cir.1987); *Tuggle v. Barksdale,* 641 F.Supp. 34, 36 (W.D.Tenn.1985); *Smith v. Halford,* 570 F.Supp. 1187, 1194 (D.Kan.1983). *Cf.* 28 U.S.C. § 1654 (party may proceed in federal court only through licensed attorney or on his own); *Bonacci v. Kindt,* 868 F.2d 1442, 1443 (5th Cir.1989) ("jailhouse lawyer" has no authority to file a notice of appeal on behalf of a *pro se* plaintiff).

█ Thus, contrary to plaintiff's apparent understanding as reflected in the prison grievance documents attached to this com-

plaint, he has no right to function as a prison ombudsman, general advocate, or agitator. He certainly has no right to abuse the TDOC grievance system by making totally unfounded attacks on prison officials. An inmate who uses that grievance system in that way may certainly be cited for disrespect. Reasonable limitations on the use of a prison grievance system and rules requiring inmates to display respect for staff members in the use of that system are clearly related to the core function of maintaining security in the prison, and such rules may be enforced by prison officials. Thus defendants did not violate plaintiff's due process rights by charging and convicting him of disrespect.

█ Plaintiff's claim that the board was not impartial is also totally meritless. *Wolff*'s requirement of an impartial fact-finder in disciplinary proceedings, 418 U.S. at 570–72, 94 S.Ct. at 2981–82, merely requires that a fact-finder not present "a hazard of arbitrary decision making." 418 U.S. at 571, 94 S.Ct. at 2982. *See also Walker v. Hughes,* 558 F.2d 1247, 1258 (6th Cir.1977). A board that follows established procedures, whose discretion is circumscribed by regulations, and which adheres to *Wolff*'s procedural requirements, does not pose a hazard of arbitrariness violative of due process. 418 U.S. at 571, 94 S.Ct. at 2982.

█ As already noted, plaintiff's allegations of deviations from the requirements of *Wolff* and *Superintendent v. Hill* are frivolous. The only bias alleged is that defendant Holcomb works under Seay's supervision. Some employment relationship between a disciplinary board member and the charging official is inevitable. Prison disciplinary proceedings, as noted by the Supreme Court in *Wolff,* "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.... Guards and inmates co-exist in direct and intimate contact. Tension be-

---

**1.** The right of access enunciated in *Bounds* belongs to the inmate needing assistance, and he must be incapable of asserting that right without help from another inmate. Thus the inmate law clerk's only proper role is in performing legal research, and providing limited advice, **not in** acting as an advocate. The First Amendment does not require that prison officials authorize him to act as an advocate, that they recognize his advocacy efforts, or that they refrain from imposing administrative penalties because he has arrogated to himself the role of an advocate.

tween them is unremitting." 418 U.S. at 561–62, 94 S.Ct. at 2977–78. There is no due process requirement that a prison official disqualify herself merely because the charging official is her supervisor.

To the extent that plaintiff asserts that any of the defendants violated his rights by failing to adhere to the procedural requirements set forth in TDOC regulations, he also has no claim. Again, the scope of "the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law." *Black v. Parke,* 4 F.3d at 447. Mere violation of state procedures is not a constitutional violation. *Spruytte v. Walters,* 753 F.2d at 508.

■■■■■ Finally, plaintiff's claim that he was the victim of retaliation is baseless. In the context of prison cases, claims of retaliatory administrative action must be analyzed under Fourteenth Amendment principles of substantive due process. *Cale v. Johnson,* 861 F.2d 943, 949 (6th Cir.1988). Such claims must include a "chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). Furthermore, an inmate claiming retaliation for an exercise of first amendment rights must show more than subsequent adverse administrative action. Rather, the prison official's conduct must transcend all bounds of reasonable conduct and shock the conscience. *Williams v. Smith,* 717 F.Supp. 523, 525 (W.D.Mich. 1989). *See also Mayberry v. Spicer,* 808 F.Supp. 563, 567 (E.D.Mich.1992) (following *Williams* ). The prison official's alleged conduct must constitute "an egregious abuse of governmental power." *Cale,* 861 F.2d at 950.

■■■■■ Here, plaintiff has alleged no chronology of events from which retaliation could be plausibly inferred. Furthermore, a prison disciplinary conviction and confinement to segregation as a penalty for disrespect does not in the least "egregiously abuse governmental authority" or "transcend all bounds of reasonable conduct and shock the conscience" of the court. *Williams v. Kling,* 849 F.Supp. 1192, 1196 (E.D.Mich.1994); *Williams v. Smith,* 717 F.Supp. at 525; *Mayberry,* 808 F.Supp. at 567.

To the extent that plaintiff had previously complained about prison conditions, filed grievances or otherwise attempted to interject himself into controversies between the WTHSF administration and other inmates, he cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory. *Smith v. Halford,* 570 F.Supp. at 1194–95. If that were so, than every prisoner could obtain review of non-cognizable claims merely by filing a lawsuit and then perpetually claiming retaliation.

A plaintiff cannot bootstrap a frivolous complaint with a conclusory allegation of retaliation. This claim, and the entire complaint, lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton v. Hernandez,* 504 U.S. 25, 31–33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989).

As the complaint is frivolous, it is DISMISSED pursuant to 28 U.S.C. § 1915(d).

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis.* Twenty-eight U.S.C. § 1915(a) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.

■■■■■ The good faith standard is an objective one. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis. See Williams v. Kullman,* 722 F.2d 1048, 1050 n. 1 (2nd Cir.1983). The same considerations that lead the court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous.

It is therefore **CERTIFIED**, pursuant to 28 U.S.C. § 1915(a), that any appeal in this matter by plaintiff, proceeding *in forma pauperis,* is not taken in good faith.

Finally, the court ORDERS that this plaintiff must file any further complaints on a form obtained from the clerk of this court and **SHALL NOT** type the complaint or any attachments in italics or Old English type. Additionally, plaintiff shall not file any supporting brief or affidavits from other inmates or persons with any proposed complaint. He shall not include any legal authority, citations, or arguments in his complaints. He shall not file any motions, briefs, or affidavits of any sort until after the court grants permission following the filing of the complaint. The complaint shall be neatly *printed* or typed in a standard typeface on the court's form and not more than two additional sheets of paper. All documents submitted must be on 8½ by 11 inch paper, have a margin of at least one inch on all four edges, and be printed on one side only. The plaintiff must personally sign the complaint.

The clerk is **ORDERED** to return to plaintiff any documents other than a complaint form and *in forma pauperis* application obtained from this court. Any document that does not comply with this order will be returned to him without being filed. The clerk shall not file, docket, or assign a judge or a docket number to any new complaints from this plaintiff without an order from a district judge.

**IT IS SO ORDERED.**