No. 120,909

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FRANKLIN L. GRAMMER JR.,
*Appellant*,

v.

KANSAS DEPARTMENT OF CORRECTIONS,
*Appellee*.

SYLLABUS BY THE COURT

1.

A petition under K.S.A. 60-1501 is a procedural means through which a prisoner may challenge the mode or conditions of his or her confinement, including administrative actions of the penal institution. To state a claim for relief, a petition must allege shocking and intolerable conduct or continuing mistreatment of a constitutional stature.

2.

Prison officials may not retaliate against or harass an inmate based on the inmate's exercise of constitutionally protected rights.

3.

Courts employ a burden-shifting framework in civil-rights retaliation actions under K.S.A. 60-1501. First, a petitioner must demonstrate as an initial matter that (1) he or she was engaged in a constitutionally protected activity; (2) the prison officials' actions caused the petitioner to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officials' adverse action was substantially motivated by the petitioner's exercise of a constitutionally protected right. It is only when a petitioner succeeds in making this initial showing that the burden shifts to

the prison officials to provide a substantial, legitimate need for their actions. Then the ultimate burden of persuasion lies with the petitioner to prove—despite the reasons given by the officials—that the petitioner's constitutionally protected conduct actually caused the adverse action.

4.

The deference appellate courts employ when reviewing a district court's decision on a K.S.A. 60-1501 petition turns on the contours of the arguments presented and the nature of the decision below. When a petitioner challenges a district court's factual findings, an appellate court will uphold those findings if they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Appellate courts exercise unlimited review over—that is, they give no deference to—a district court's legal conclusions.

5.

A conclusion that a party did not meet his or her burden of proof is a negative finding. When the district court makes a negative finding in denying a petition for habeas corpus, its ruling will not be disturbed on review absent a showing of an arbitrary disregard of undisputed evidence or some extrinsic influence such as bias, passion, or prejudice.

Appeal from Ellsworth District Court; SCOTT E. MCPHERSON, magistrate judge. Opinion filed November 27, 2019. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Robert E. Wasinger*, legal counsel, of Kansas Department of Corrections, for appellee.

Before POWELL, P.J., HILL and WARNER, JJ.

WARNER, J.:  Franklin L. Grammer Jr. appeals the district court's denial of his K.S.A. 60-1501 petition, alleging the Kansas Department of Corrections retaliated against him for engaging in activities protected by the First Amendment to the United States Constitution. In particular, Grammer claims the KDOC transferred him to progressively worse conditions after he corresponded with the ACLU about the KDOC magazine policies and filed another grievance for health reasons. Because Grammer brought these claims, he was required to first demonstrate that the KDOC's transfer decisions were substantially motivated by retaliation for his protected speech before the KDOC was called to present any evidence of its reasons for the transfer. The district court—after holding an evidentiary hearing and listening to Grammer's testimony—found he had not proved this critical point and thus denied the petition. We affirm.

FACTUAL & PROCEDURAL BACKGROUND

Grammer is an inmate with the Kansas Department of Corrections. Before June 2016, he was incarcerated at the Hutchinson Correctional Facility. Grammer asserts that during that time, the KDOC seized several personal magazines from him—magazines such as *Popular Science*, *Field & Stream*, and *Garden & Gun*. Between February and June 2016, Grammer filed multiple appeals of these seizures through the KDOC administrative process. Some of these appeals were successful, in that the KDOC ultimately determined the magazines should not have been taken, but by that time the particular magazines were no longer available to be returned.

Frustrated with the KDOC's response, Grammer sent a letter to the ACLU sometime during the spring of 2016 explaining the history of magazine seizures. Grammer later testified he sent the first such letter to a friend to forward on to the ACLU because he was afraid of reprisal from the KDOC. The ACLU responded to his letter directly, leading to some back-and-forth correspondence between Grammer (from his prison address) and the organization over the next few months.

3

During the same period, Grammer's sister requested that he be transferred from Hutchinson to Lansing Correctional Facility because his mother, who lived in Leavenworth, was ill and wanted to visit him. The KDOC granted this request, moving Grammer to Lansing on June 14, 2016. Later that month, the ACLU wrote again and informed him that "they had received several complaints from inmates" about magazines being taken and that "they had an ongoing investigation" but "could do nothing more about it."

Grammer, who has a bad knee, was initially housed in Q1 at the Lansing facility. Q1 is on the lower level and can be accessed via a short ramp from the main level. About two weeks later, the KDOC moved him to Q2, on an upper level. This move meant Grammer had to walk up a longer ramp with a steeper grade to access his living quarters. Grammer thus filed a grievance with the KDOC, claiming that living on the upper floor aggravated his knee injury.

On July 12, 2016—exactly four weeks after his move from Hutchinson to Lansing—the KDOC transferred Grammer to Ellsworth Correctional Facility. Grammer filed another grievance, asserting that he believed the transfer was made in retaliation for filing his initial grievance (regarding the move from Q1 to Q2) and his communications with the ACLU. Grammer's mother remained ill and could not visit him at Ellsworth; she died in June 2017.

The KDOC answered both grievances, citing K.A.R. 44-15-101a(d)(2) and informing Grammer that housing assignment transfers were "nongrievable" issues because they relate to "the classification decision-making process."

Grammer then filed a petition under K.S.A. 60-1501 with the district court, again asserting the transfers were retaliatory in nature. More specifically, Grammer asserted

4

that his move from Q1 to Q2 in Lansing was a reprisal for contacting the ACLU about the magazines (which Grammer asserted was a violation of his freedom of speech under the First Amendment) and that his transfer to Ellsworth was retaliation for his filing a grievance over the first move. The KDOC moved to dismiss the petition, arguing prison officials have the authority to transfer an inmate to any institution or facility at any time and for any reason under K.S.A. 2016 Supp. 75-5206.

The district court directed both parties to brief the issues and held an evidentiary hearing. Relying on federal caselaw applying 42 U.S.C. § 1983, the court noted that Grammer had the burden to prove that the transfers were retaliatory—that is, were effected because he had engaged in constitutionally protected activity. If Grammer made this initial prima facie showing of retaliation, the burden would then shift to the KDOC to "'justify their abridgement of his fundamental constitutional right by establishing a substantial, legitimate need for the transfer.'"

Grammer was the sole witness to testify at the evidentiary hearing. He stated that when he began corresponding with the ACLU about the magazines, the KDOC "started moving [him] to progressively worse conditions." His retaliation argument focused on KDOC's awareness of his contact with the ACLU and on the chronology of his grievances and transfers. When asked why he believed his transfers were made in retaliation for contacting the ACLU, Grammer could not recall, stating, "I don't actually remember what the circumstances was [*sic*], but I do know that it made clear that Lansing was aware of" the correspondence. And he pointed out that the transfers occurred around the same time he received his final letter from the ACLU.

The KDOC agreed Grammer had engaged in activities protected by the First Amendment, but argued he had not shown he was transferred for engaging in those activities. The KDOC noted there was no reason to believe Grammer's move to Q2 or to Ellsworth made his ability to file grievances or to communicate with the ACLU more

5

difficult; thus, Grammer had failed to prove a connection between the transfers and the protected conduct. And it asserted Grammer had not demonstrated that the transfers were motivated by retaliatory intent.

The KDOC did not offer testimony at the hearing, but it attached a number of exhibits to its original motion. At the hearing, the district court referenced one of these exhibits—a document entitled "Central Monitoring Case Review"—which detailed concerns raised by a Lansing employee related to Grammer's placement at that facility. This employee contacted Lansing's administrative office and explained that Grammer had been "making some inquiries about her, her family, [and] her personal life" and appeared to have "great knowledge" about those subjects. The employee, who was a living unit supervisor, asked that Grammer be housed in a different facility. The KDOC transferred Grammer from Lansing to Ellsworth six days after the employee filed her report.

The district court denied Grammer's petition, finding he "did not meet his burden to show that his transfer was not the result of a legitimate reason" and "did not submit substantial evidence that his moves within the prison were the result of retaliation." Grammer appeals.

DISCUSSION

A petition under K.S.A. 60-1501 is "a procedural means through which a prisoner may challenge the mode or conditions of his or her confinement, including administrative actions of the penal institution." *Safarik v. Bruce*, 20 Kan. App. 2d 61, 66-67, 883 P.2d 1211 (1994). To state a claim for relief, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009).

6

Kansas courts, like our federal counterparts, have recognized that "[p]rison officials may not retaliate against or harass an inmate based on the inmate's exercise of" protected rights. *Bloom v. Arnold*, 45 Kan. App. 2d 225, 232, 248 P.3d 752 (2011); *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). At the same time, "[b]ecause the realities of running a penal institution are complex and difficult," courts "have also recognized the wide-ranging deference to be accorded the decisions of prison administrators." *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 126, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977).

To strike a balance between protecting the petitioner's constitutional rights and giving "appropriate deference to the decisions of prison administrators," courts employ a burden-shifting framework. See *Jones*, 433 U.S. at 125. First, to state a civil-rights retaliation claim—whether under K.S.A. 60-1501 or 42 U.S.C. § 1983—an inmate must demonstrate as an initial matter that (1) he or she was engaged in a constitutionally protected activity; (2) the prison officials' actions caused the inmate to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officials' adverse action was substantially motivated by the inmate's exercise of a constitutionally protected right. *Bloom*, 45 Kan. App. 2d at 233; *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005). It is "[o]nly when" a petitioner succeeds in making this initial showing that the burden shifts to the prison officials to provide "a substantial, legitimate need" for their actions. *Smith v. Halford*, 570 F. Supp. 1187, 1196 (D. Kan. 1983). Then the ultimate burden of persuasion lies with the petitioner to prove—despite the reasons given by the officials—that the petitioner's constitutionally protected conduct actually caused the adverse action. See *McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979) ("Plaintiff must prove he would not have been transferred 'but for' the alleged reason.").

Few Kansas cases have considered claims alleging retaliatory transfers among prison facilities. For this reason, the parties and the district court applied the standards

7

articulated in federal prison-transfer cases discussing 42 U.S.C. § 1983—the federal analog of K.S.A. 60-1501 in this area. In particular, the district court relied on *McDonald* and *Smith* to find that Grammer had the ultimate burden to prove the "motivating factor for his transfer was his writ-writing activities." 570 F. Supp. at 1196. But first, quoting *Smith*, the court noted that Grammer was required to make an initial, threshold showing by "substantial evidence" as to why he believed the transfers were motivated by retaliation. See *Smith*, 570 F. Supp. at 1196. The parties do not dispute this standard.

The sole question before this court is whether the district court erred in finding that Grammer failed to make this initial showing. The deference appellate courts give to a district court's decision on a K.S.A. 60-1501 petition turns on the contours of the arguments presented and the nature of the decision below. For example, when a petitioner challenges a district court's factual findings, an appellate court will uphold those findings if they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004); *Hooks v. State*, 51 Kan. App. 2d 527, 530, 349 P.3d 476 (2015). And appellate courts exercise unlimited review over—that is, they give no deference to—a district court's legal conclusions. *Rice*, 278 Kan. at 320; *Hooks*, 51 Kan. App. 2d at 530.

In contrast, a conclusion that a party did not meet his or her burden of proof—like the district court made here—is a negative finding requiring substantial deference on appeal because it inherently involves credibility assessments and weighing of evidence. "When the district court makes a negative finding in denying a petition for habeas corpus, its ruling will not be disturbed on review absent a showing of an arbitrary disregard of undisputed evidence or some extrinsic influence such as bias, passion, or prejudice." *Merryfield v. Sullivan*, No. 109,558, 2014 WL 1707675, at *1 (Kan. App. 2014) (citing *McCracken v. Kohl*, 286 Kan. 1114, 1121, 191 P.3d 313 [2008]), *rev. denied* 301 Kan. 1046 (2015).

Grammer argues the district court erred because his testimony provided "a timeline that would support the contention that the moves were retaliatory in nature based upon his filing of grievances and contacting the ACLU." Grammer asserts his testimony provided evidence that these activities were the but-for cause of his transfers, and that he therefore "provided sufficient proof that prison officials retaliated against him for the exercising [of] his First Amendment rights." The KDOC responds that Grammer merely asserted conclusory allegations and failed to offer any specific evidence of retaliation.

Considering all the arguments and evidence presented, the district court did not err in denying Grammer's petition. In explaining its ruling, the district court noted Grammer's testimony regarding the chronology of events but found that this timeline alone did not prove the transfers were made for retaliatory reasons. Instead, the court found Grammer's testimony amounted to little more than his own personal belief or conjecture about the retaliatory nature of the transfers—a point underscored by Grammer's admission that he could not pinpoint a specific reason why he believed the KDOC would react adversely to the ACLU correspondence, other than the fact that one letter was sent to him by the ACLU while he was housed in Lansing. Accord *Smith*, 570 F. Supp. at 1196 (explaining that a person challenging a prison-transfer "must detail the evidence he possesses that his transfer was for no reason other than his legal activities"). The court then balanced these unsubstantiated beliefs against the explanation provided in the "Central Monitoring Case Review," where an employee specifically requested that Grammer be moved to a different facility based on inquiries he was making into her personal life.

Applying the retaliation test set forth in *Bloom*, the record supports the district court's conclusion. Though the parties stipulated that Grammer had engaged in constitutionally protected activity—filing his grievance relating to the transfer from Q1 to Q2 and communicating with the ACLU—Grammer did not demonstrate that the KDOC's actions would chill a person's efforts to engage in that activity or that his constitutionally

9

protected actions substantially motivated the transfers. See *Bloom*, 45 Kan. App. 2d at 233. Notably, Grammer presented no evidence or argument that the transfers made it more difficult for him to exercise his First Amendment rights or would dissuade someone from engaging in protected speech in the future. And Grammer's timeline does not provide the support he claims: Grammer provides no explanation as to why he believes the KDOC took allegedly retaliatory action while he lived in Lansing and Ellsworth when his correspondence with the ACLU occurred primarily from Hutchinson.

Grammer asserts the KDOC submitted no evidence that his transfers were made for legitimate reasons. But the KDOC had no duty to explain the reasons behind the transfers until Grammer met his initial burden of demonstrating that the catalyst for his transfers was his engagement in protected activities. See *Smith*, 570 F. Supp. at 1196. And even if Grammer had made such a showing, the KDOC provided an alternative and legitimate explanation for the move from Lansing to Ellsworth through the "Central Monitoring Case Review" document attached to its original motion to dismiss.

The district court's conclusion that Grammer failed to meet this burden is a negative finding. Grammer has made no showing on appeal that the court arbitrarily disregarded undisputed evidence or was influenced by bias, passion, or prejudice. To the contrary, the court considered the evidence presented and concluded Grammer had not demonstrated, as an initial matter, that his transfers were effected with a retaliatory motive. We find no reason to set aside the district court's decision.

Affirmed.