Eric Cordell PENDLETON, et al.,

v.

Joseph Gower MILLS.

Court of Appeals of Tennessee,
at Nashville.

Sept. 18, 2001.

Permission to Appeal Denied by
Supreme Court Feb. 11, 2002.

Eric Pendleton and Ricky Flamingo Brown, Nashville, TN, pro se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Dawn Jordan, Assistant Attorney General, for Joseph Gower Mills.

## OPINION

KOCH, J., delivered the opinion of the court, in which CAIN and COTTRELL, JJ., joined.

This appeal involves a dispute between two prisoners incarcerated at the Riverbend Maximum Security Institution and a corrections officer over the confiscation of a draft note one prisoner desired to pass to the other. One of the prisoners filed a grievance over the confiscation of his note. Before the prison's grievance procedures had been exhausted, both prisoners filed a pro se 42 U.S.C. § 1983 (1994) action in the Circuit Court for Davidson County, alleging that the corrections officer had violated his oath of office, unlawfully discriminated against them based on their race, and unlawfully interfered with their right of access to court. The trial court granted the corrections officer's motion for summary judgment based on the prisoners' failure to exhaust their remedies before filing suit. Both prisoners have appealed. We have determined that the trial court erred by dismissing the prisoners' complaint for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) (1994 Supp. V 1999). However, we have also determined that the complaint of one of the prisoners is subject to dismissal on other grounds.

**I.**

Eric C. Pendleton and Ricky Flamingo Brown are incarcerated at the Riverbend Maximum Security Institution in Nashville. Mr. Pendleton is serving a life sentence and a concurrent six-year sentence following his 1987 convictions for first de-

gree murder and aggravated assault.[1] Mr. Brown is serving a life sentence stemming from his 1987 conviction for raping his twelve-year-old daughter.[2]

Both Mr. Pendleton and Mr. Brown are extremely litigious. In addition to the direct appeal from his convictions, Mr. Pendleton has filed three petitions for post-conviction relief in state court, one petition for a writ of habeas corpus in state court, and, at his own count, two other lawsuits in the United States District Court for the Middle District of Tennessee which have been dismissed. Mr. Brown forfeited the direct appeal from his rape conviction because of his escape. However, following his recapture, he has filed one petition for post-conviction relief in state court, twelve lawsuits in the United States District Court for the Middle District of Tennessee, and one lawsuit in the United States District Court for the Western District of Tennessee. All but one of these lawsuits have been dismissed and have been found to be frivolous.[3]

Mr. Pendleton serves as an "inmate legal helper"[4] for Unit One at Riverbend Maximum Security Institution. On June 19, 2000, in response to an appropriate request, he met with Mr. Brown in the non-contact visiting room of Unit One. The two prisoners were separated by a glass partition, apparently for security reasons. The purpose of this meeting was to discuss how they could challenge the federal Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[5]

Messrs. Pendleton and Brown apparently decided that the prison library did not contain sufficient information about the AEDPA and that they should file a grievance against the library for lack of information and for failing to provide assistance. They decided to ask the librarian to provide them with information regarding how the library had acquired its information regarding the AEDPA. Because Mr. Brown lacked paper, he requested Mr. Pendleton to provide him with a sheet of paper to draft the questions they planned to put to the librarian. Because they were separated by glass, Mr. Pendleton asked Corporal Joseph Gower Mills, who was observing their discussion, to hand a sheet of paper to Mr. Brown. Corporal Mills complied. After Mr. Brown completed the draft, he asked Corporal Mills to hand the draft to Mr. Pendleton. Rather than returning the draft to Mr. Pendleton, Corporal Mills confiscated it on the pretext that department policy did not permit employ-

1. *Pendleton v. State,* No. 01C01–9604–CR–00158, 1997 WL 59501, at *1 (Tenn.Crim. App. Feb.13, 1997), *perm. app. denied* (Tenn. Oct. 13, 1997).

2. *Brown v. State,* No. 01C01–9708–CR–00363, 1999 WL 61060, at *1 (Tenn.Crim.App. Feb.10, 1999), *perm. app. denied* (Tenn. July 12, 1999).

3. Mr. Brown did not disclose either *Brown v. Crody,* 21 F.3d 427 (6th Cir.1994) or *Brown v. Carpenter,* 889 F.Supp. 1028 (W.D.Tenn.1995) as he was required to do by Tenn.Code Ann. § 41–21–805(a)(1) (1997). Had Mr. Brown filed this complaint in forma pauperis on or after April 11, 2001, it would have been sub-

ject to summary dismissal upon a showing that three or more of his prior complaints were dismissed on the ground that they were frivolous, malicious, or failed to state a claim upon which relief can be granted. Tenn.Code Ann. § 41–21–807(c) (Supp.2001.)

4. Tennessee Dep't of Corr. Policy No. 501.04 permits "inmate legal helpers" who have been approved by the institution's warden to assist other inmates in preparing legal materials.

5. Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 852 (1996) as amended.

ees to hand deliver inmate messages addressed to other staff members.[6] When confronted by Messrs. Brown and Pendleton about his actions, Corporal Mills responded, at least according to the prisoners: "All you black prisoners do is sit around trying to get out of prison."

Mr. Brown filed an inmate grievance regarding this incident on June 23, 2000. Corporal Mills's supervisor and the grievance board sided with Corporal Mills at the first level of the grievance proceeding, and on July 4, 2000, Mr. Brown requested a second level hearing. Before this hearing could be held, Messrs. Brown and Pendleton filed this 42 U.S.C. § 1983 complaint in the Circuit Court for Davidson County on July 11, 2000, alleging that Corporal Mills had denied them access to the courts, had discriminated against them based on their race, and had violated his oath of office.

Two weeks after Messrs. Brown and Pendleton filed their lawsuit, the grievance board recommended to the warden that internal affairs personnel should look into the allegations concerning Corporal Mills. The warden overruled this recommendation on July 25, 2000, and on August 4,

2000, the Commissioner of Correction's designee denied Mr. Brown's appeal and concurred with the warden's decision. With this action, Mr. Brown had exhausted all his avenues for administrative consideration of his grievance arising out of the June 19, 2000 incident.

On August 29, 2000, the Attorney General and Reporter filed a "motion to dismiss or for summary judgment" on behalf of Corporal Mills. The motion asserted that the complaint filed by Messrs. Brown and Pendleton failed to state a claim upon which relief could be granted and that Corporal Mills was entitled to a judgment as a matter of law. Unfortunately, the Attorney General's motion failed to state precisely why Corporal Mills was entitled to a judgment as a matter of law as required by Tenn. R. Civ. P. 7.02.[7] We presume from the affidavit by "Sargent [sic] Eyvonne Staples" attached to the motion, that two of the grounds of the motion must have been that Mr. Brown's grievance had not been fully resolved and that Mr. Pendleton had not filed a grievance regarding the June 19, 2000 incident.[8] On October 26, 2000, the trial court entered an order granting Corporal Mills's summary judgment motion and dismissing the com-

---

6. The draft Mr. Brown had prepared appeared to be addressed to the librarian.

7. Tenn. R. Civ. P. 7.02(1) requires that motions must "state with particularity the grounds therefor." We surmise that the Office of the Attorney General may have articulated a specific reason or reasons why Corporal Mills was entitled to a judgment as a matter of law in a memorandum of law accompanying its motion. However, this memorandum, by operation of Tenn. R.App. P. 24(a), is not a part of the appellate record. Suffice it to say that articulating a defense in a memorandum accompanying a motion does not amount to compliance with Tenn. R. Civ. P. 7.02(1). *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn.Ct.App., 2001).

8. Mr. Brown's grievance had been fully resolved for over three weeks by the time the Attorney General filed its motion and by almost one week when Sergeant Staples signed her affidavit. While the statement in Sergeant Staples's affidavit that "[a]s of August 1, 2000, the grievance has not been fully resolved" is technically correct, some question exists concerning whether Sergeant Staples knew when she executed the affidavit that Assistant Commissioner Rose had denied Mr. Brown's appeal from the warden's dismissal of his grievance on August 4, 2000. For the purpose of this opinion, we will presume that Sergeant Staples was unaware of Assistant Commissioner Rose's action and that she filled out her affidavit in good faith.

plaint. This order does not state the basis for the trial court's decision.

## II.

### THE STANDARD OF REVIEW

The motion filed on behalf of Corporal Mills is a hybrid. It combines a Tenn. R. Civ. P. 12.02(6) motion to dismiss with a Tenn. R. Civ. P. 56 motion for summary judgment. Of course, a Tenn. R. Civ. P. 12.02(6) motion must be converted to a summary judgment motion if "matters outside the pleadings are presented to and not excluded by the court." *Pacific Eastern Corp. v. Gulf Life Holding Co.,* 902 S.W.2d 946, 952 (Tenn.Ct.App.1995). Thus, at the outset, we must determine whether the trial court relied on matters outside of the pleadings when it granted Corporal Mills's motion.

Included with the motion filed on behalf of Corporal Mills is the August 10, 2000 affidavit by Sergeant Eyvonne Staples. This affidavit relates exclusively to the status of Mr. Brown's pending grievance and the fact that Mr. Pendleton never filed a grievance of his own. In light of the recital in the trial court's order that it considered the motion "on the pleadings and other materials submitted," we conclude that the trial court did not exclude Sergeant Staples's affidavit and, therefore, that Corporal Mills's motion, at least insofar as the grounds that rely on the affidavit are concerned, must be treated as a motion for summary judgment under Tenn. R. Civ. P. 56. However, to the extent that the motion asserted grounds under Tenn. R. Civ. P. 12.02(6) that did not rely on Sergeant Staples's affidavit, it should be treated as a motion to dismiss. The difference between a motion to dismiss and a motion for summary judgment is more than academic when it comes to the standard of review.

### A.

### The Standard of Review For Orders Granting Tenn. R. Civ. P. 12.02(6) Motions

The sole purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. *Doe v. Sundquist,* 2 S.W.3d 919, 922 (Tenn.1999); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d 550, 554 (Tenn.1999). It requires the courts to review the complaint alone, *Daniel v. Hardin County Gen. Hosp.,* 971 S.W.2d 21, 23 (Tenn.Ct.App.1997), and to look to the complaint's substance rather than its form. *Kaylor v. Bradley,* 912 S.W.2d 728, 731 (Tenn.Ct.App.1995). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity. *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn.Ct.App.1992).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Winchester v. Little,* 996 S.W.2d 818, 821–22 (Tenn.Ct.App.1998); *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113, 115 (Tenn.Ct.App.1997). Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Stein v. Davidson Hotel,* 945 S.W.2d 714, 716 (Tenn.1997), and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts. Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5–6(g), at 254 (1999). On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, we must likewise presume that the factual allega-

tions in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d at 554; *Stein v. Davidson Hotel,* 945 S.W.2d at 716.

### B.

### The Standard of Review For Orders Granting Tenn. R. Civ. P. 56 Motions

The standards for reviewing summary judgments on appeal are well-settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe,* 952 S.W.2d 408, 410 (Tenn.1997); *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales,* 39 S.W.3d 149, 156 (Tenn.Ct.App.2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion-that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 269 (Tenn.2001); *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62, 66 (Tenn.2001); *Goodloe v. State,* 36 S.W.3d 62, 65 (Tenn.2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker,* 963 S.W.2d 726, 731 (Tenn.1998); *Belk v. Obion County,* 7 S.W.3d 34, 36 (Tenn.Ct. App.1999). In order to be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall,* 847 S.W.2d at 215 n. 5; *Cherry v. Williams,* 36 S.W.3d 78, 82–83 (Tenn.Ct.App.2000).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Nelson v. Martin,* 958 S.W.2d 643, 647 (Tenn.1997). Mere conclusory generalizations will not suffice. *Cawood v. Davis,* 680 S.W.2d 795, 796–97 (Tenn.Ct.App.1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) by rehabilitating evidence challenged by the moving party, (3) by producing additional evidence that creates a material factual dispute, or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn.1998); *Byrd v. Hall,* 847 S.W.2d at 215 n. 6. A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of a cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n,* 870 S.W.2d 278, 280 (Tenn.1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom,* 911 S.W.2d 727, 729 (Tenn.Ct.App.1995).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.,* 49 S.W.3d 281, 285 (Tenn.2001); *Penley v. Honda Motor Co.,* 31 S.W.3d 181, 183 (Tenn.2000). Accordingly, appellate courts must make a

fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Mason v. Seaton,* 942 S.W.2d 470, 472 (Tenn.1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.,* 46 S.W.3d 191, 196 (Tenn.2001); *Memphis Hous. Auth. v. Thompson,* 38 S.W.3d 504, 507 (Tenn.2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn.Ct.App.1998).

### III.

#### THE RACIAL DISCRIMINATION AND VIOLATION OF OATH OF OFFICE CLAIMS

We turn first to Messrs. Pendleton's and Brown's 42 U.S.C. § 1983 claims charging that Corporal Mills discriminated against them because of their race and that Corporal Mills violated the oath of office he took as a corrections officer as required by Tenn.Code Ann. § 41–1–103 (1997). While the appellate record contains voluminous evidentiary matters beyond the pleadings themselves, none of this mountain of material relates to these two claims. Accordingly, in the absence of the trial court's explanation of the basis for its decision to dismiss these claims, we will presume that they were dismissed pursuant to Tenn. R. Civ. P. 12.02(6) because they failed to state a claim upon which relief can be granted. We agree with that disposition.

#### A.

#### The Claim Based on Corporal Mills's Comment

■ The racial discrimination claim in this case is based solely on Corporal Mills's comment that "all you black prisoners do is sit around trying to get out of prison." While the statement does not reflect the professionalism reasonably expected from Tennessee's corrections officers, it does not provide a basis for a 42 U.S.C. § 1983 claim. This sort of comment should be considered in light of the realities of prison life because conduct that might be considered inappropriate or offensive in free society is often commonplace behind the walls.

■ The dealings and discourse between prisoners and the persons guarding them is not always polite. Order is maintained in a prison, not by reasoned discussion or democratic debate, but rather by coercion and discipline. Not every push and shove by a corrections officer, even if it might seem unnecessary in the peace of a judge's chambers, gives rise to a 42 U.S.C. § 1983 claim. *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973). The same can be said for verbal taunts, insults, and racial slurs. Comments that may be viewed as offensive outside of prison are not nearly as shocking inside prison. *Shabazz v. Cole,* 69 F.Supp.2d 177, 200 (D.Mass.1999). As a practical matter, the exchange of verbal insults between prisoners and corrections officers is an every day occurrence. *Somers v. Thurman,* 109 F.3d 614, 622 (9th Cir.1997).

■ The courts that have considered claims such as the one in this case have uniformly held that verbal threats and insults, including racial slurs, do not provide grounds for a 42 U.S.C. § 1983 action. *E.g., Somers v. Thurman,* 109 F.3d at 622;

*Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979); *Shabazz v. Cole,* 69 F.Supp.2d at 201; *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997); *Wright v. Santoro,* 714 F.Supp. 665, 666–67 (S.D.N.Y.1989); *Morgan v. Ward,* 699 F.Supp. 1025, 1055 (N.D.N.Y.1988). To be actionable under 42 U.S.C. § 1983, the verbal abuse must be accompanied by a wanton act of cruelty which, if it occurred, would be considered unusually brutal. *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.1983); *Spicer v. Collins,* 9 F.Supp.2d 673, 683 (E.D.Tex.1998).[9]

When Corporal Mills's comment is measured against these standards, it falls far short of amounting to the sort of conduct that gives rise to a 42 U.S.C. § 1983 claim. Messrs. Brown and Pendleton have not asserted that Corporal Mills's statements were accompanied by brutal or cruel acts that would have caused them legitimate concern for their personal safety or well-being. The purpose of 42 U.S.C. § 1983 is not to enable prisoners to assuage their hurt feelings. While we do not condone or endorse statements such as the one attributed to Corporal Mills, his statement is de minimus under the circumstances alleged in the complaint. Accordingly, we find that the portion of Messrs. Brown's and Pendleton's complaint based on Corporal Mills's statement that "all you black prisoners do is sit around trying to get out of prison" fails to state a claim upon which relief under 42 U.S.C. § 1983 can be granted.

**B.**

**The Claim Based on Corporal Mills's Oath of Office**

■ The claim based on Corporal Mills's violation of his oath of office must meet the same fate. An action under 42 U.S.C. § 1983 provides a vehicle for remedying the violation of rights created by federal law. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995). While violations of oaths of office such as the one Corporal Mills took are punishable as perjury, Tenn.Code Ann. § 41–3–103(c), they do not provide a basis for civil actions under state law. *Whitaker v. Whirlpool Corp.,* 32 S.W.3d 222, 231 (Tenn.Ct.App. 2000) (declining to recognize a civil action for perjury). Similarly, they do not provide a basis for civil actions under 42 U.S.C. § 1983. Accordingly, the portion of the complaint filed by Messrs. Brown and Pendleton based on Corporal Mills's alleged violation of his oath of office fails to state a claim upon which relief under 42 U.S.C. § 1983 can be granted.

**IV.**

**THE EXHAUSTION OF REMEDIES REQUIREMENT**

■ The remaining 42 U.S.C. § 1983 claim asserted by Messrs. Brown and Pendleton is that Corporal Mills's refusal to deliver Mr. Brown's draft note to Mr. Pendleton violated their right of access to court. Giving their papers the most chari-

**9.** The sort of conduct that would be actionable under 42 U.S.C. § 1983 would be making racial slurs, accompanied by drawing a weapon and threatening to shoot a prisoner. *E.g., Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir.1992) (law enforcement officers held a pistol to a prisoner's head and threatened to kill him); *Wisniewski v. Ken-* *nard,* 901 F.2d 1276, 1277 (5th Cir.1990) (a corrections officer placed a revolver in a prisoner's mouth and threatened to blow the prisoner's head off); *Burton v. Livingston,* 791 F.2d 97, 100 (8th Cir.1986) (a corrections officer drew his weapon, made racial epithets, and threatened to shoot an African American prisoner in the back).

table construction possible, Messrs. Brown and Pendleton appear to be arguing that Corporal Mills's interception of the draft note to the prison librarian regarding the library's AEDPA materials interfered with their joint efforts to prepare a lawsuit challenging the constitutionality of the AEDPA.[10] Rather than joining issue directly on this claim, the Attorney General and Reporter, on behalf of Corporal Mills, asserted that the trial court should decline to consider the claim because Mr. Pendleton had never filed a grievance regarding this incident and because Mr. Brown's grievance had not been finally resolved.

■ The Attorney General's "exhaustion of remedies" argument is premised on the mandatory exhaustion requirement in 42 U.S.C. § 1997e(a) which provides that prisoners cannot file 42 U.S.C. § 1983 actions challenging "prison conditions" until they have exhausted all their available administrative remedies. By making this argument, the Attorney General ignores, or at least undertakes to circumvent, Tenn. Code Ann. § 41–21–806(c) (1997) which gives a prisoner a ninety-day grace period

after filing suit to exhaust whatever administrative remedies might be available. When asked to file a supplemental brief addressing Tenn.Code Ann. § 41–21–806(c), the Attorney General responded that 42 U.S.C. § 1997e(a) preempts Tenn. Code Ann. § 41–21–806(c). The Attorney General is mistaken.

### A.

Through the 1970s, the United States Justice Department employed 42 U.S.C. § 1983 to address widespread violations of the constitutional and federal statutory rights of persons residing in state institutions.[11] In 1980, after decisions by two United States District Courts questioned the federal Attorney General's standing to initiate or intervene in these sorts of actions, the Congress enacted the Civil Rights of Institutionalized Persons Act to give the Attorney General statutory standing to continue to use 42 U.S.C. § 1983 to protect persons institutionalized in state facilities in light of the state and local governments' inability or unwillingness to do so.[12]

10. Prisoners have a reasonable right of access to the courts. *Johnson v. Avery*, 393 U.S. 483, 485, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969). This right includes the right to receive legal advice from other prisoners only when it is a necessary "means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Shaw v. Murphy*, 532 U.S. 223, 231 n. 3, 121 S.Ct. 1475, 1480 n. 3, 149 L.Ed.2d 420 (2001); *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977). In order to make out a claim for denial of access to court, a prisoner must demonstrate that the alleged obstructive conduct actually hindered his or her efforts to present a legal claim to the court. *Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996).

While the papers filed by Messrs. Brown and Pendleton are far from clear, they ap-

pear to allege that both Mr. Brown and Mr. Pendleton were planning to challenge the constitutionality of the AEDPA. Because the Attorney General has not challenged these allegations, we must take them as true for the purpose of considering the summary judgment motion. Thus, for the purpose of this opinion, we will assume that Messrs. Brown and Pendleton have articulated a denial-of-access-to-court claim. Our opinion, however, should not be construed as determining that they have established a prima facie case that Corporal Mills's conduct interfered with their access to the courts.

11. S.Rep. No. 96–416, at 1 (1980), *reprinted in* 1980 U.S.C.C.A.N. 787, 788.

12. S.Rep. No. 96–416, at 2, 19 (1980), *reprinted in* 1980 U.S.C.C.A.N. 787, 789, 800.

As part of its deliberations regarding this legislation, the Congress recognized that many state and local governments had developed "high quality grievance resolution systems" to address problems that led to the filing of many 42 U.S.C. § 1983 lawsuits.[13] The Congress also recognized that pro se prisoner suits were "swamping" the federal courts.[14] Accordingly, the Congress included a limited exhaustion requirement in the Civil Rights of Institutionalized Persons Act to promote the spread of high quality grievance resolution systems in state and local institutions and to reduce the number of lawsuits by promoting the resolution of disputes at the administrative level without litigation. Thus, Section 7(a)(1) of the Civil Rights of Institutionalized Persons Act provided:

> Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 90 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

42 U.S.C. § 1997e(a)(1) (1994). The Congress amended this provision in 1994 to extend the 90 day exhaustion period to 180 days. As interpreted by the federal courts, this provision required the dismissal of a prisoner's Section 1983 action with prejudice if the prisoner did not exhaust his or her available remedies within the defined period. *Pedraza v. Ryan*, 18 F.3d 288, 289–90 (5th Cir.1990).

In 1996, the Tennessee General Assembly borrowed a page from the Congress's book and enacted a limited exhaustion requirement substantially identical to the 1980 version of 42 U.S.C. § 1997e(a)(1).[15] Tenn.Code Ann. § 41–21–806(c) provides:

> If a claim is filed before the grievance procedure is complete, the court shall stay the proceeding with respect to the claim for a period not to exceed ninety (90) days to permit completion of the grievance procedure.

Based on its plain language, Tenn.Code Ann. § 41–21–806(c), like the original version of its federal counterpart, gives prisoners a 90–day opportunity to exhaust whatever administrative remedies they had available after filing the 42 U.S.C. § 1983 action in state court. If anything, Tenn.Code Ann. § 41–21–806(c) was more liberal than its federal counterpart because it did not condition a prisoner's right to a 90–day grace period on a court's determination that granting the grace period would be "appropriate and in the interests of justice."

■ While the Tennessee General Assembly was liberalizing the exhaustion requirements for prisoners filing 42 U.S.C. § 1983 actions in the state courts, the Congress was moving in the opposite direction. The Congress realized that the Civil Rights of Institutionalized Persons Act had caused an increase rather than a decrease in the number of pro se 42 U.S.C. § 1983 actions filed by prisoners in the federal courts. Accordingly, within months after the Tennessee General Assembly enacted Tenn.Code Ann. § 41–21–806(c), the Congress enacted the Prison Litigation Re-

---

**13.** S.Rep. No. 96–416, at 34 (1980), *reprinted in* 1980 U.S.C.C.A.N. 787, 816.

**14.** S.Rep. No. 96–416, at 34 (1980), *reprinted in* 1980 U.S.C.C.A.N. 787, 816.

**15.** Act of April 24, 1996, ch. 913, § 1, 1996 Tenn. Pub. Acts 569, 571, codified as Tenn. Code Ann. § 41–21–806.

form Act of 1995 which replaced the limited exhaustion requirement that had been in existence since 1980 with a mandatory exhaustion requirement. As amended, 42 U.S.C. § 1997e(a) now states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

As construed by the federal courts, 42 U.S.C. § 1997e(a) currently requires the dismissal of a prisoner's 42 U.S.C. § 1983 claims in any case in which an available administrative remedy has not been exhausted. *Massey v. Wheeler*, 221 F.3d, 1030, 1034 (7th Cir.2000). Thus, the current mandatory exhaustion requirement requires a prisoner to exhaust all administrative remedies that are available regardless of whether these remedies will provide the prisoner the relief he or she seeks. *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); *Perez v. Wisconsin Dep't of Corrs.*, 182 F.3d 532, 536–37 (7th Cir.1999).

The fate of the denial of access to court claim in this case depends upon whether the limited exhaustion requirement in Tenn.Code Ann. § 41–21–806(c) or the mandatory exhaustion requirement in 42 U.S.C. § 1997e(a) applies. If the former, the complaint is not subject to dismissal for failure to exhaust administrative remedies because Mr. Brown pursued the grievance procedure to its conclusion within ninety days after filing his complaint. If the latter, the complaint is subject to dismissal because Mr. Brown had not exhausted his remedies under the grievance procedure by the time he filed suit. When called upon to explain which of these statutes applies in this case, the Attorney General responded that 42 U.S.C. § 1997e(a) applies because it preempts Tenn.Code Ann. § 41–21–806(c).

**B.**

■ Our federal system of government recognizes the dual sovereignty of the federal government and the various state governments. *Printz v. United States*, 521 U.S. 898, 918, 117 S.Ct. 2365, 2376, 138 L.Ed.2d 914 (1997); *Gregory v. Ashcroft*, 501 U.S. 452, 457, 111 S.Ct. 2395, 2399, 115 L.Ed.2d 410 (1991). The states possess sovereignty within their particular spheres concurrent with the federal government subject only to the power of the Congress under the Supremacy Clause of the United States Constitution [16] to preempt state law. *Tafflin v. Levitt*, 493 U.S. 455, 458, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990); *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d 663, 670 (Tenn.Ct.App.1997).

The courts, however, are reluctant to presume that preemption of state law has occurred. *Building & Constr. Trades Council v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 224, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565 (1993); *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d at 670. Accordingly, the courts work from the assumption that the historic powers of the states with regard to matters traditionally subject to state regulation are not displaced by a federal statute unless that is the clear and manifest intent of Congress. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 540–

---

**16.** U.S. Const. art. VI, cl. 2 provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the land; and the Judges of every State shall be bound thereby, any Thing in the Constitution or laws of any state to the Contrary notwithstanding."

41, 121 S.Ct. 2404, 2414–15, 150 L.Ed.2d 532 (2001); *Egelhoff v. Egelhoff*, 532 U.S. 141, 151, 121 S.Ct. 1322, 1330, 149 L.Ed.2d 264 (2001); *California Div. of Labor Standards Enforcement v. Dillingham Const., N.A.*, 519 U.S. 316, 325, 117 S.Ct. 832, 838, 136 L.Ed.2d 791, (1997); *Grace Thru Faith v. Caldwell*, 944 S.W.2d 607, 609 (Tenn.Ct.App.1996).

Congressional purpose is the "ultimate touchstone" of the preemption inquiry. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992); *Riggs v. Burson*, 941 S.W.2d 44, 48 (Tenn.1997). The courts have found the requisite preemptive purpose in three circumstances. First, express preemption occurs when the Congress includes explicit preemptive language in the federal statutes. Second, implied preemption exists when the federal statutes occupy the entire legislative field leaving no room for state regulation.[17] Third, implied preemption also exists, even if the Congress has not occupied the entire field, to the extent of any outright or actual conflict between federal and state law.[18] *Lorillard Tobacco Co. v. Reilly*, 533 U.S. at 540, 121 S.Ct. at 2414; *Gade v. National Solid Wastes Mgt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992); *LeTellier v. LeTellier*, 40 S.W.3d 490, 497 (Tenn.2001); *Profill Dev., Inc. v. Dills*, 960 S.W.2d 17, 27 (Tenn.Ct.App.1997).

These categories of preemption are not "rigidly distinct." *English v. General Elec. Co.*, 496 U.S. 72, 79 n. 5, 110 S.Ct. 2270, 2275 n. 5, 110 L.Ed.2d 65 (1990). The United States Supreme Court has held that preemption exists when it is impossible for a private party to comply with both state and federal law and when, under the circumstances of the particular case, the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the Congress. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372–73, 120 S.Ct. 2288, 2294, 147 L.Ed.2d 352 (2000); *see also Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 542 (Tenn.1989).

 Any preemption inquiry must begin with the language of the federal statutes. In cases involving express preemption, the text of the federal statute will define the domain that Congress intended to preempt. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996). However, in both express and implied preemption cases, the federal statutory language does not occur in a vacuum. Accordingly, the courts must also consider the structure and purpose of the entire federal statutory scheme. *Crosby v. National Foreign Trade Council*, 530 U.S. at 373, 120 S.Ct. at 2294; *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 1108, 134 L.Ed.2d 237 (1996); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). State law should be displaced only to the extent that it is expressly or impliedly preempted. *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 476, 116 S.Ct. 1063, 1064, 134 L.Ed.2d 115 (1996); *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d at 671. Accordingly, the proper approach is to reconcile the federal and state laws, *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 182–83, 98 S.Ct. 988, 1007, 55 L.Ed.2d 179 (1978); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 127, 94 S.Ct. 383, 389–90, 38 L.Ed.2d 348 (1973), rather than to seek out conflict where none clearly exists. *Exxon Corp. v.*

---

**17.** This type of implied preemption is commonly referred to as field preemption.

**18.** This type of implied preemption is commonly referred to as conflict preemption.

*Governor of Maryland*, 437 U.S. 117, 130, 98 S.Ct. 2207, 2216, 57 L.Ed.2d 91 (1978).

### C.

The Prison Litigation Reform Act of 1995 does not contain an express preemption provision.[19] Accordingly, if the Attorney General's preemption argument on behalf of Corporal Mills is to succeed, it must be premised on either conflict preemption or field preemption. As best we can determine from the sketchy argument in the Attorney General's supplemental brief, he appears to be arguing that Tenn.Code Ann. § 41–21–806(c) has been preempted by the Prison Litigation Reform Act of 1995 because it conflicts with 42 U.S.C. § 1997e(a). Thus, we must examine 42 U.S.C. § 1997e(a) and its related statutes to ascertain whether the Congress clearly and manifestly intended to preempt procedural statutes like Tenn.Code Ann. § 41–21–806(c).

The legislative history of Prison Litigation Reform Act of 1995 provides no insight into whether the Congress intended for the mandatory preemption provisions to apply to 42 U.S.C. § 1983 claims filed in state courts. However, this Act amended the Civil Rights of Institutionalized Persons Act, and the legislative history of the Civil Rights of Institutionalized Persons

Act provides some helpful insight into the Congress's intent. The Senate Report on this legislation explains that "[t]his section [the limited exhaustion provision] provides, in certain cases, for exhaustion of correctional grievance procedures prior to commencement of a prisoner suit in Federal court under 42 U.S.C.1983." [20] Similarly, both the Senate Report and the House Conference Committee Report pointed out that the limited exhaustion provision "authorizes a Federal court in which an adult prisoner's suit filed under 42 U.S.C.1983 is pending to continue that action for a period not to exceed 90 days if the prisoner has access to a grievance resolution system. . . ." [21] That the Congress would specifically state that the provision applied to the federal courts without mentioning its application to the state courts suggests that the Congress had no preemptory intent.[22]

The Congress's specific mention of federal courts without also mentioning state courts was not an oversight. From 1980 through 1996, the Congress knew that both federal and state courts had jurisdiction over 42 U.S.C. § 1983 claims.[23] It also knew that it had purposely left many of the procedures governing the consideration of 42 U.S.C. § 1983 claims, in both federal and state courts, to be gov-

---

**19.** Likewise, the Civil Rights of Institutionalized Persons Act did not contain an express preemption provision.

**20.** S. Rep. 96–416, at 34 (1980), *reprinted in* 1980 U.S.C.C.A.N. 787, 816.

**21.** S. Rep. 96–416, at 34 (1980), *reprinted in* 1980 U.S.C.C.A.N. 787, 816; H.R. Conf. Rep. No. 96–897, at 15 (1980), *reprinted in* 1980 U.S.C.C.A.N. 832, 839.

**22.** The legislative history regarding the Congress's decision in 1994 to increase the stay period in 42 U.S.C. § 1997e(a)(1) from 90 to 180 days likewise fails to reflect any intent on

the Congress's part to apply the limited exhaustion requirement to 42 U.S.C. § 1983 suits filed in state courts. Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, § 20416(a)(1)(A), 108 Stat. 1796, 1833–34.

**23.** States have concurrent jurisdiction with the federal courts to enforce the rights created by federal law. *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–08, 82 S.Ct. 519, 522–23, 7 L.Ed.2d 483 (1962); *Watson v. Cleveland Chair Co.*, 789 S.W.2d at 542. This principle specifically applies to 42 U.S.C. § 1983 actions. *Poling v. Goins*, 713 S.W.2d 305, 307 (Tenn.1986).

erned by state law.[24] Accordingly, the federal courts had consistently deferred to state procedural rules, such as those governing the tolling of statutes of limitations, *Hardin v. Straub*, 490 U.S. 536, 543, 109 S.Ct. 1998, 2003, 104 L.Ed.2d 582 (1989), or those defining the finality of judgment for the purposes of an appeal, *Johnson v. Fankell*, 520 U.S. 911, 919, 117 S.Ct. 1800, 1805, 138 L.Ed.2d 108 (1997).

Because of its awareness that 42 U.S.C. § 1983 actions could be filed in state courts, the Congress knew full well the federal law must take the state courts as it finds them. *Howlett v. Rose*, 496 U.S. 356, 372, 110 S.Ct. 2430, 2441, 110 L.Ed.2d 332 (1990). Accordingly, the Congress understood (1) that the states have great latitude to establish the structure and jurisdiction of their own courts, *Johnson v. Fankell*, 520 U.S. at 919, 117 S.Ct. at 1805 and (2) that state courts have great latitude to establish the rules of procedure governing litigation in their own courts. *Felder v. Casey*, 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988); *Selma Med. Ctr., Inc. v. Fontenot*, —— So.2d ——, ——, 2001 WL 873615, at *11 (Ala.2001) (Johnstone, J., concurring); *Ex Parte Gounis*, 304 Mo. 428, 263 S.W. 988, 990 (1924); *Kramer v. Horton*, 128 Wis.2d 404, 383 N.W.2d 54, 59 (1986), *overruled on other grounds by Casteel v. Vaade*, 167 Wis.2d 1, 481 N.W.2d 476, 483 (1992). In light of the Congress's awareness of these general rules, it is easy to understand why the Congress limited its consideration of the exhaustion requirement to federal courts.

As a final matter, the Attorney General's preemption argument cannot succeed because Tenn.Code Ann. § 41–21–806(c)

neither conflicts with nor frustrates the accomplishment of the goals of the federal statutes. It is not in conflict with the remedial purpose of 42 U.S.C. § 1983 which is to "ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." *Burnett v. Grattan*, 468 U.S. 42, 55, 104 S.Ct. 2924, 2932 (1984). Giving prisoners up to ninety days to exhaust their grievance remedies before dismissing their 42 U.S.C. § 1983 action, if anything, increases the possibility that deserving inmates will be able to obtain judicial relief in state courts if their dispute with their keepers are not satisfactorily resolved through the grievance process.

We reach the same conclusion when we consider Tenn.Code Ann. § 41–21–806(c) in light of the Congress's purposes for enacting the mandatory exhaustion requirement in the Prison Litigation Reform Act of 1995. Like its predecessor, the Civil Rights of Institutionalized Persons Act, the purpose of the Prison Litigation Reform Act of 1995 is to reduce the number of frivolous, pro se prisoner lawsuits clogging the courts. Tenn.Code Ann. § 41–21–806(c) is consistent with this goal because it will not prompt prisoners to file two suits on the same issue.

As a general matter, a lawsuit filed before the exhaustion of available administrative remedies is subject to dismissal on the ground that it is not yet ripe for adjudication. A dismissal on lack of ripeness grounds is, of course, not a decision on the merits for the purposes of res judicata. 13A Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3532.1, at 137 (2d ed.1984). Accordingly, a prisoner

---

**24.** 42 U.S.C. § 1988(a) (1994) incorporates "the common law, as modified and changed by the constitution and statutes of the state wherein the court having jurisdiction … is held, so far as the same is not inconsistent with the Constitution and laws of the United States…."

whose initial suit is dismissed for failure to exhaust grievance remedies will simply file a second suit after his or her grievance is denied. Ironically, were we to adopt the Attorney General's preemption argument, we would most likely increase the amount of prisoner litigation. We see little to be gained by adopting this practice.

In summary, we have determined that the Attorney General has failed to demonstrate that the Congress clearly and manifestly intended to preempt statutes like Tenn.Code Ann. § 41–21–806(c) when it enacted the current version of 42 U.S.C. § 1997e(a).[25] In the absence of this sort of intent, we find that the procedural requirements of Tenn.Code Ann. § 41–21–806(c) are applicable to the complaint filed by Messrs. Brown and Pendleton. The Attorney General has failed to demonstrate that Corporal Mills is entitled to a judgment as a matter of law on the ground that Messrs. Brown and Pendleton did not comply with 42 U.S.C. § 1997e(a). Accordingly, the trial court erred by granting Corporal Mills a summary judgment based on 42 U.S.C. § 1997e(a).

## V.

### MR. PENDLETON'S DENIAL OF ACCESS TO COURT CLAIM

■ In Section IV of this opinion, we concluded that the trial court erred by relying on 42 U.S.C. § 1997e(a) to dismiss the portion of the complaint filed by Messrs. Brown and Pendleton based on the alleged denial of their access to court. However, this decision does not prevent us from examining Mr. Pendleton's claim to determine whether he has complied with the requirements of Tenn.Code Ann. § 41–21–806. We have determined, based on the undisputed evidence, that he has not and that his failure to do so provides grounds for dismissing his 42 U.S.C. § 1983 claim.

In 1996, the Tennessee General Assembly directed the Department of Correction to "develop and maintain a system for the resolution of grievances by inmates housed in facilities operated by the department that qualifies for certification under 42 U.S.C. § 1997e." [26] The Department responded by implementing a grievance procedure in 1996 and by amending this procedure in 2000.[27] Based on these policies, Corporal Mills's actions on June 19, 2000 provided grounds for filing an inmate grievance. Mr. Brown, in fact, filed an inmate grievance on June 23, 2000, but Mr. Pendleton did not.

■ When a statute mandates an administrative remedy, one must exhaust this administrative remedy before seeking judicial relief. *Thomas v. State Bd. of*

**25.** We have also determined that the Attorney General's reliance on *Sweatt v. Campbell*, No. 02A01–9808–CV–00227, 1999 WL 95978, at *2 (Tenn.Ct.App. Feb. 25, 1999) *perm. app. denied* (Tenn. July 6, 1999) is misplaced. While there is language in the *Sweatt v. Campbell* opinion and in *McGowan v. Gibson*, No. E2000–01385–COA–R3–CV, 2000 WL 1721663, at *3 (Tenn.Ct.App. Nov.17, 2000) (No Tenn. R.App. P. 11 application filed) indicating that the Prison Litigation Reform Act of 1995 required prisoners to commence and exhaust their grievance remedies before filing a 42 U.S.C. § 1983 action in state court, we find nothing in these decisions to indicate that either court considered Tenn.Code Ann. § 41–21–806(c) or that either court was presented with the preemption question raised by this case. These cases have not been formally published. While these cases are certainly persuasive authority with regard to the issues they actually addressed, they are not controlling on us in this case. Tenn. S.Ct. R. 4(H).

**26.** Act of Apr. 24, 1996, ch. 913, § 17(a), 1996 Tenn. Pub. Acts 569, 573, codified at Tenn. Code Ann. § 41–21–817(a) (1997).

**27.** TDOC Policy No. 501.01.

*Equal.*, 940 S.W.2d 563, 566 (Tenn.1997); *Coe v. City of Sevierville*, 21 S.W.3d 237, 241 (Tenn.Ct.App.2000); *Davis v. Sundquist*, 947 S.W.2d 155, 156 (Tenn.Ct.App. 1997). This generally applicable principle applies to 42 U.S.C. § 1983 claims filed in state court. *L.L. Bean, Inc. v. Bracey*, 817 S.W.2d 292, 297 (Tenn.1991).

 Mr. Pendleton failed to seek the remedies available to him under the existing grievance procedures. Accordingly, he could not comply with Tenn.Code Ann. § 41–21–806(a)'s requirement that he file an affidavit stating that he had filed a grievance and that it had been finally resolved. Neither did he undertake to file and exhaust his grievance remedies within ninety days after he and Mr. Brown filed their complaint. His claim was, therefore, subject to dismissal under the state, as opposed to the federal, common-law and statutory exhaustion requirements. Accordingly, we affirm the dismissal of Mr. Pendleton's complaint, albeit on different grounds than those relied upon by the trial court.[28]

## VI.

We affirm the dismissal of Mr. Pendleton's complaint on all grounds and the dismissal of the portions of Mr. Brown's complaint seeking relief for both racial discrimination and violation of Corporal Mills's oath of office. However, we reverse the dismissal of the portion of Mr. Brown's complaint seeking relief for the alleged denial of his access to court and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to

---

**28.** The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn.1986);

the State of Tennessee for which execution, if necessary, may issue.

*Allen v. National Bank of Newport,* 839 S.W.2d 763, 765 (Tenn.Ct.App.1992); *Clark v. Metropolitan Gov't,* 827 S.W.2d 312, 317 (Tenn.Ct.App.1991).