IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2019 Session

## ELVIS PRESLEY ENTERPRISES INC. ET AL. v. CITY OF MEMPHIS ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-0972      Jim Kyle, Chancellor**

——————————————————

**No. W2019-00299-COA-R3-CV**

——————————————————

J. STEVEN STAFFORD, P.J., W.S., dissenting.

The majority chooses to affirm the trial court's dismissal of the complaint filed by EPE on the basis of the doctrine of res judicata.[1] Because I conclude that an essential element of the doctrine of res judicata has not been established, I must respectfully dissent.

Here, EPE has filed two lawsuits: the first case dismissed by the trial court on February 16, 2018, and the second lawsuit, the dismissal of which is the subject of the instant appeal. In particular, Memphis Basketball contends that the trial court's February 16, 2018 order in the first action is preclusive as to the issues in the second action under the doctrine of res judicata. As the majority correctly points out, the doctrine of res judicata has four essential elements, all of which must be proven for the doctrine to preclude a second action: (1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties or their privies were involved in both suits; (3) that the underlying judgment was final and on the merits; and (4) that the same claim or cause of action was asserted in both suits. ***Jackson v. Smith***, 387 S.W.3d 486, 491 (Tenn. 2012) (citing ***Lien v. Couch***, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)).

While I agree that the first two elements are clearly met in this case, I must depart from the majority's conclusion as to the third element—that the first action was adjudicated on the merits. In reaching this result, the majority relies on the general nature of motions to dismiss under Rules 12.02 and 41.02(3) of the Tennessee Rules of Civil Procedure. Respectfully, I believe that this conclusion ignores the realities of the trial

---

[1] Throughout this separate opinion, I will refer to the parties in the same manner as the majority opinion.

court's decision in the first case. Instead, a barely more-than-cursory review of the trial court's order indicates that the trial court's ruling was not a ruling on the merits.

The trial court's February 16, 2018 order provides in relevant part as follows:

> In essence, the underlying issue is one of tax divergence, which is a matter for the legislative branch of government in cooperation with the executive branch of government, since the executive branch has the sole authority to contract on behalf of the County under Shelby County's charter. Before this Court should consider the issue, EPE must have EDGE formally rule that they have rejected the Supplemental Plan and that the City Council and County Commission formally deny EPE's appeal of EDGE'S decision. Pulling the hearing from the agenda is not a ruling against EPE.
> Further, while EPE alleges generally that Memphis Basketball strong-armed EDGE and the other Defendants in such a way that made it impossible for EPE to move forward, the Court finds that Defendants actions, and specifically Memphis Basketball's actions, were completely within their constitutional rights to raise. The threat to sue and asserting alleged contractual rights are protected rights.
> Therefore, since EPE has not exhausted its administrative remedies, EPE lacks standing to bring this matter before the Court and all three motions to dismiss are hereby GRANTED in their entirety. All four claims of EPE are dismissed. There being no other claims in this matter before the Court, this is a final order regarding dismissal due to lack of standing based upon the pleadings filed.

Thus, although the trial couched its dismissal in terms of standing, it is clear that the basis of the trial court's ruling was that EPE failed to exhaust its remedies.

Reported caselaw in this jurisdiction, however, confirms that a dismissal based on failure to exhaust remedies is not an adjudication on the merits. Rather, this court explained the doctrine in the context of a prisoner lawsuit as follows:

> As a general matter, a lawsuit filed before the exhaustion of available administrative remedies is subject to dismissal on the ground that it is not yet ripe for adjudication. A dismissal on lack of ripeness grounds is, of course, not a decision on the merits for the purposes of res judicata. 13A Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3532.1, at 137 (2d ed.1984). Accordingly, a prisoner whose initial suit is dismissed for failure to exhaust grievance remedies will simply file a second suit after his or her grievance is denied.

***Pendleton v. Mills***, 73 S.W.3d 115, 129–30 (Tenn. Ct. App. 2001), *perm. app. denied* (Tenn. Feb. 11, 2002); *cf.* Tenn. R. Sup. Ct. 4(G)(2) ("Opinions reported in the official reporter . . . shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction."). The trial court's decision to couch its dismissal in terms of standing rather than ripeness does not alter my conclusion, as the Tennessee Supreme Court has explained that "'[t]he standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention[.]" ***Am. Civil Liberties Union of Tennessee v. Darnell***, 195 S.W.3d 612, 620 n.7 (Tenn. 2006) (quoting ***Warth v. Seldin***, 422 U.S. 490, 499 n.10, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975)).

Moreover, both logic and common sense dictate that a dismissal for failure to exhaust remedies is non-prejudicial. The purpose of the doctrine is to require or encourage courts "to stay their hand until an administrative proceeding is completed[.]" ***B & B Enterprises of Wilson Cty., LLC v. City of Lebanon***, 318 S.W.3d 839, 847 (Tenn. 2010) (citing ***Bailey v. Blount Cnty. Bd. of Educ.***, 303 S.W.3d 216, 235 (Tenn. 2010)). Under this doctrine, "the courts deem it appropriate to permit administrative agencies to develop their final position with regard to the matters before them prior to undertaking to review the agency's decision." ***Id.*** at 847–48. Thus, by its very nature, a dismissal for failure to exhaust remedies presupposes future proceedings before the trial court following a final decision before the applicable agency. It is unsurprising then, that the majority does not cite a single case, nor has my research revealed any caselaw, in which a dismissal based on failure to exhaust administrative remedies was deemed an adjudication on the merits for purposes of res judicata.

By clearly indicating that the basis of its ruling was EPE's failure to exhaust remedies, a ruling that by controlling law does not operate as an adjudication on the merits, the trial court indicated its intent that its ruling was not an adjudication on the merits. *See* Tenn. R. Civ. P. 41.02(3) (noting that dismissal is an adjudication on the merits, "[u]nless the court in its order otherwise specifies"). And if the majority of this panel needs more convincing, the trial court's oral ruling makes its intent explicit:

> I rule that [EPE] has not exhausted their administrative remedies and, therefore, has no standing and, therefore, all three motions to dismiss are granted in their entirety.
>
> **This is not a ruling on the merits** of the interpretation of the lease.

(Emphasis added). Thus, the trial court clearly states that the basis of its ruling is EPE's failure to exhaust remedies and that the ruling was not an adjudication on the merits.

As the majority correctly points out, this ruling constituted a final judgment and was never appealed. Thus, while it may be argued that the trial court was incorrect in

applying the exhaustion doctrine outside of the administrative realm, there can be no dispute that it did so. Just as the party seeking to avoid application of the doctrine will not prevail merely by questioning the soundness of the trial court's prior ruling, a party seeking application of the doctrine may not do so by arguing that the trial court's prior ruling, had it been correctly decided, would have been an adjudication on the merits. Here, right or wrong, the trial court simply did not adjudicate EPE's claims on the merits, but dismissed the case for failure to exhaust remedies. The reality of the trial court's ruling indicates that the trial court anticipated future judicial proceedings following a final decision from EDGE, as the trial court's written order explicitly states that EPE needed to seek a final ruling from EDGE "[b]efore [the trial court] should consider this issue[.]"

Moreover, although res judicata was raised as a defense in the trial court, the trial court did not dismiss EPE's second suit on the basis of res judicata. Of course, the trial judge in the case-at-bar was the same trial judge that dismissed the first suit for failure to exhaust remedies and therefore is in the best position to determine the meaning of its own orders. Thus, although the question of whether res judicata is applicable is reviewed de novo with no presumption of correctness, see **Jackson**, 387 S.W.3d at 491, I question the majority's decision to ignore both the express language of the trial court's ruling and the clear import of its decision to require EPE to take further action as a condition precedent to review of the merits of EPE's claims by the trial court. Simply put, the trial court's order, in both language and spirit, directed EPE to obtain a ruling from EDGE "before" the court could consider its issue; when EPE returned to the trial court, purportedly with this requested ruling in hand, the majority concludes that trial court was no longer at liberty to decide the substantive issue, having already decided it in the prior case. Respectfully, the majority's decision places EPE in the untenable position of "battl[ing] a Kafkaesque bureaucracy in which it is beckoned to the administrative hearing . . . while" its right to judicial review was simultaneously foreclosed by complying with the trial court's mandate to seek further review by EDGE. **State v. Dep't of Health, Ed. & Welfare**, 480 F. Supp. 929, 939 (E.D.N.C. 1979); *see also* **Kendall v. Kittles**, No. 03 CIV.628 GEL, 2003 WL 22127135, at *4 (S.D.N.Y. Sept. 15, 2003) (noting that the exhaustion of administrative remedies doctrine applicable to prisoner grievances is not intended to "produce . . . a Kafkaesque result").; *cf.* *Webster's New World College Dictionary* 792 (5th ed. 2014) (defining Kafkaesque as "characteristic of, or like the writings of Kafka; specif[ically], surreal, nightmarish, confusing complex, etc."). Such a result defies logic and reason.

Based on the foregoing, I would conclude that an essential element of the doctrine res judicata defense is absent in this case. As such, res judicata does not bar EPE's second lawsuit on this subject. Instead, I would proceed to consider the basis for dismissal actually utilized by the trial court—standing—to determine whether the trial court correctly dismissed EPE's complaint. Consequently, I respectfully dissent from the majority's decision.

_____
J. STEVEN STAFFORD, JUDGE