IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2009 Session

## RICHARD L. HUBBELL v. SUMNER ANESTHESIA ASSOCIATES, INC., ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2008C-87      Tom E. Gray, Chancellor**

_____

**No. M2008-01736-COA-R3-CV - Filed April 29, 2009**

_____

Shareholder and employee of a professional corporation filed suit demanding payment of the fair value of his shares in the corporation following termination of his employment.  The corporation subsequently tendered $760.48 to the Sumner County Clerk and Master, the amount it believed represented the fair value of the shareholder's shares as of the date of his termination of employment with the corporation.  The trial court granted summary judgment for the corporation finding the shareholder failed to contradict the corporation's proposed fair value. Finding error, we reverse and remand the case for further proceedings.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR, J. joined.  PATRICIA J. COTTRELL, P.J., M.S., filed a dissenting opinion.

Russell E. Edwards and Michael W. Edwards, Hendersonville, Tennessee, for the appellant, Richard L. Hubbell, M.D.

H. E. Miller, Jr., Gallatin, Tennessee, for the appellee, Sumner Anesthesia Associates, Inc., et al.

**OPINION**

**I.  Factual and Procedural Background**

The Appellant, Richard L. Hubbell, M.D., is a former director, officer and employee of Sumner Anesthesia Associates, Inc. ("SAA"), a closely held corporation engaged in the business of providing anesthesia health care services.  Dr. Hubbell resigned as director, officer and employee on October 25, 2006.  Prior to his resignation, Dr. Hubbell was the president of SAA.  On March 25, 2007, SAA canceled Dr. Hubbell's shares of SAA on its books.  Dr. Hubbell filed the present action on April 21, 2008, to recover the fair value of his shares in SAA pursuant to the Tennessee

Professional Corporation Act, Tenn. Code Ann. § 48-101-601 *et seq.*[1] Dr. Hubbell alleged that he owned 29 percent of the shares of SAA and upon his departure SAA failed to purchase or otherwise acquire his shares as required by Tenn. Code. Ann. § 48-101-613.

SAA filed an Answer on May 22, 2008, in which it contended that SAA had five shareholders, including Dr. Hubbell, each owning 100 shares, or 20 percent, of SAA and that it believed the fair value of Dr. Hubbell's shares as of October 25, 2006, was $760.48; SAA deposited that amount with the Clerk and Master of the Court. SAA arrived at this value by comparing the following and choosing the calculation that provided Dr. Hubbell with the highest value: (1) the "Total Shareholder's Equity" in SAA on October 31, 2006, which was $2,865.00, and would result in Dr. Hubbell's "Stockholder's Equity" being $573.00; (2) the "Total Shareholder's Equity" in SAA on December 31, 2006, which was $2,790.00, and would result in Dr. Hubbell's "Stockholder's Equity" being $558.00; (3) the average amount of "Total Shareholder's Equity" in SAA for the year 2006, which was $3,802.42, and would result in Dr. Hubbell's "Stockholder's Equity" being $760.48; (4) the average amount of "Total Shareholder's Equity" in SAA for the first ten months of 2006, which was $3,781.50, and would result in Dr. Hubbell's "Stockholder's Equity" being $756.30. Accompanying its Answer, SAA provided Dr. Hubbell with a copy of SAA's balance sheets showing the corporation's total assets, total liabilities, and total shareholders' equity as of September 30, 2006, October 31, 2006, and December 31, 2006; SAA also provided Dr. Hubbell with a copy of SAA's income statement for the year 2006.[2] SAA's Answer also listed the total shareholders' equity at the end of each month of 2006, which was:

| | |
|---|---|
| January - ($2,453.00) | July - $1,822.00 |
| February - ($1,531.00) | August - $6,956.00 |
| March - $2,520.00 | September - $1,744.00 |
| April - $2,733.00 | October - $2,865.00 |
| May - $21,101.00 | November - $10,604.00 |
| June - $2,058.00 | December - ($2,790.00) |

On the same day, SAA filed a Motion for Summary Judgment. In support of its motion, SAA filed a Statement of Material Facts as well as the affidavits of Thomas Mark Carter, M.D., president of SAA, and Ronnie C. Fox, C.P.A., SAA's accountant. Dr. Hubbell filed a Response to SAA's motion on June 23, 2008, contending that SAA's Statement of Material Facts contained deficiencies, including making statements of law rather than fact and failing to cite to the record, but that, in any event, there were material facts in dispute and that discovery was necessary in order to determine the

---

[1] Dr. Hubbell's Complaint asserted, in the alternative, that if the trial court found that SAA was not a professional corporation that, in any event, it was a closely held corporation and "it would be inequitable or unjust for the corporation to not acquire Hubbell's shares of stock since it would be impossible for him to exercise his shareholder's rights." SAA did not dispute that it was a professional corporation and that the Tennessee Professional Corporation Act should govern.

[2] These balance sheets and SAA's income statement are not part of the record and it is unclear whether the trial court viewed or considered them.

fair value of Dr. Hubbell's shares of SAA. Dr. Hubbell also filed a Statement of Additional Material Facts and an affidavit in which he stated that the amount tendered by SAA was "unrepresentative of the fair value of my shares of stock in the corporation" and that "[t]he fair value of my shares of stock consist of, *inter alia*, the corporation's contract rights, accounts receivable, tangible property, intellectual property, good will, name recognition, debts, the market, gross receipts, expenses, etc." SAA did not file any reply to Dr. Hubbell's response to the summary judgment motion.

Following a hearing on June 30, 2008, the trial court granted SAA's motion for summary judgment finding the following in an amended order entered on July 30, 2008:

> [P]laintiff was a stockholder, an employee officer and director with Sumner Anesthesia Associates (SAA), Inc. on the 25th day of October, 2006; that upon termination of employment with SAA that plaintiff was entitled to his stockholder's equity; that Ronnie Fox, C.P.A., Accountant for SAA since August 29, 1996 made affidavit as to the average amount of the Total Stockholder's Equity in SAA for 2006 and the Total Stockholder's Equity as of the 31st day of October 2006 and the Total Stockholder's equity [sic] as of the 31st day of December, 2006; that the affidavit of Richard L. Hubbell fails to dispute the affidavit of Ronnie Fox, C.P.A.; and further, Richard L. Hubbell's affidavit fails to dispute the affidavit of Thomas Mark Carter, President of Sumner Anesthesia Associates, Inc. The court finds no genuine issues of a material fact; the court recognizes that Richard Hubbell made an affidavit that the Fox affidavit and the Carter affidavit did not represent the fair market value of his shares of stock by stating, 'the same is unrepresentative of the fair value of my shares of stock in the corporation.' Dr. Hubbell in item four (4) of his affidavit sets out a general statement of elements in a fair market value but does not contradict the Fox and Carter affidavits as to value.

This appeal followed.

## II. Standard of Review

This appeal is from a grant of summary judgment. Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clark*, 113 S.W.3d 715, 721 (Tenn. 2003). Moreover, it is proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d 208, 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, it is not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruis*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk Southern Railway Co.,* 271 S.W.3d 76, 83 (Tenn. 2008).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall,* 113 S.W.3d at 721; *Godfrey,* 90 S.W.3d at 695. When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd,* 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

The summary judgment analysis has been clarified in two recent opinions by the Tennessee Supreme Court. *See Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76 (Tenn. 2008); *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008). A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Byrd,* 847 S.W.2d at 215. Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan,* 270 S.W.3d at 8-9; *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5. If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. The nonmoving party may satisfy its burden of production by:

(1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley*, 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n.6; *Martin* 271 S.W.3d at 83-84.

-4-

## III. Discussion

The Tennessee Professional Corporation Act, Tenn. Code Ann. § 48-101-601 *et seq.*, regulates the incorporation, powers, governance and dissolution of professional corporations in this state including the manner in which shares of a professional corporation may be acquired, transferred or canceled. According to Tenn. Code Ann. § 48-101-613, when a shareholder terminates employment with a professional corporation, the corporation must acquire the departing shareholder's shares at a price the corporation believes represents their fair value; value is determined as of the date the shareholder terminates employment. *Id.*

Under Tenn. Code Ann. § 48-101-613(b), if a price is fixed for shares in a professional corporation under its charter or by-laws, or if all the interested parties can agree on a price, then that price controls. If no such price is fixed, then the professional corporation must deliver a written offer to the shareholder to purchase the shares "at a price the corporation believes represents their fair value." *Id.*; Tenn. Code Ann. § 48-101-614(a). The corporation must accompany the written offer with "the corporation's balance sheet for a fiscal year ending not more than sixteen (16) months before the effective date of the offer notice, an income statement for that year, a statement of changes in shareholders' equity for that year, and the latest available interim financial statements, if any." *Id.* Therefore, the statute places the burden of making an offer and delivering certain financial documents to the shareholder on the corporation. SAA made no such offer and, as the statute permits, Dr. Hubbell commenced this action to determine the fair value of his shares. *See* Tenn. Code Ann. § 48-101-615. In such a proceeding, the statute charges the court with the responsibility of determining the fair value of the shareholder's shares and permits the court to appoint an appraiser to receive evidence and recommend a decision. *Id.* The "shareholder is entitled to judgment for the fair value of such shareholder's shares determined by the court as of the date of . . . termination of employment, together with interest from that date at a rate found by the court to be fair and equitable." Tenn. Code Ann. § 48-101-615(d).

There are many cases that provide guidance on how to determine the fair value of closely held corporations, including professional corporations, whether in the context of divorce proceedings, dissenting shareholder proceedings, or proceedings such as this one under the T.P.C.A. *See Spivey v. Page*, No. M2002-00674-COA-R3-CV, 2004 WL 350651 at *5 (Tenn. Ct. App. Feb. 24, 2004) (holding that no appraisal of a professional services corporation's fair value would be complete without taking into account the continuing ability of its professionals to meet the needs of its clients and to generate revenue by providing those professional services); *Pelot v. Cakmes*, No. E1999-02550-COA-R3-CV, 2000 WL 116046 (Tenn. Ct. App. Jan. 31, 2000) (perm. app. denied) (the valuation of a dental practice was calculated by combining three methods: Excess Earnings, Market Approach and Cash Flow Method); *York v. York*, No. 01-A-01-9104-CV00131, 1992 WL 181710 at *3 (Tenn. Ct. App. Jul. 31, 1992) (held that "corporate good will" should factor into the valuation of a doctor's share in a multi-specialty medical group). What these cases emphasize is that such appraisals are not an exact science and there is no single mathematical formula; rather "it is a factually driven inquiry that requires the trial court to weigh and evaluate all relevant evidence regarding value." *York*, 1992 WL 181710 at *4 (Tenn. Ct. App. Jul. 31, 1992). The goal of an

appraisal proceeding is to compensate the owner of the stock for his or her property right, and the statute places the burden of determining fair value with the court instead of the parties. In adopting the Delaware Rule, also known as the Delaware Block Method,[3] for appraising the fair value of a dissenting shareholder's shares in a closely held corporation, the Tennessee Supreme Court explained that "[t]here are numerous other factors [in addition to the  factors considered in the Delaware Block Method] that expert witnesses may deem relevant on the question of the weight to be given each of the three methods, but *the courts must make the final determination of the appropriate weight to be given each method as well as the ultimate value of the stock interest.*" *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 667 (Tenn. 1983) (emphasis added).

The court based the grant of summary judgment on its determination that there was no genuine issue of material fact and stated, in this regard, that "the affidavit of Richard L. Hubbell fails to dispute the affidavit of Ronnie Fox, C.P.A.; and further, Richard L. Hubbell's affidavit fails to dispute the affidavit of Thomas Mark Carter, President of Sumner Anesthesia Associates, Inc." The trial court "recognized" that Dr. Hubbell's affidavit stated that the Fox and Carter affidavits did not represent the fair value of his shares because the fair value of his shares consisted of "*inter alia*, the corporation's contract rights, accounts receivable, tangible property, intellectual property, good will, name recognition, debts, the market, gross receipts, expenses, etc.;" however, the court erroneously determined that this did not create a genuine issue of material fact. To defeat SAA's motion for summary judgment, the burden on Dr. Hubbell was to create an issue of fact relative to the value assigned by SAA. *See Martin*, 271 S.W.3d at 83-84. He could do this, *inter alia,* by producing additional evidence establishing the existence of a genuine issue for trial. *McCarley*, 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n.6; *Martin, supra.* "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Martin, supra.* And a disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.* Considering the evidence in the light most favorable to the non-moving party and resolving all inferences in that party's favor, *Stovall,* 113 S.W.3d at 721, we find Dr. Hubbell sufficiently demonstrated that there was a genuine issue of material fact as to the fair value of his shares of SAA. The affidavit, along with the Statement of Additional Material Facts, neither of which was replied to by SAA, raised a genuine issue of material fact as to whether SAA's valuation included all relevant elements.[4]

---

[3] The Delaware Rule, or Delaware Block Method, utilizes the three primary methods used by courts in determining the fair value of shares of dissenting shareholders – the market value method, the asset value method and the investment value method – and then assigns weight to each method as may be appropriate considering the type of business, the objectives of the corporation, and other relevant factors. For example, where there is no established market and none can be reconstructed, market price is not considered at all; or in a commercial business, earnings are given great weight as the primary purpose of the business is to generate earnings and not to hold assets that will appreciate in value. *See Blasingame*, 654 s.W.2d at 667.

[4]  In addition, counsel for Dr. Hubbell, in the response to the motion for summary judgment, noted that additional discovery needed to be done in order to develop facts from which the court could determine the stock's fair value.

The trial court granted summary judgment to SAA, saying that Dr. Hubbell "was entitled to his stockholder's equity." Tenn. Code Ann. § 48-101-615(d), however, provides that the departing stockholder is entitled to the "fair value" of the shares. As the cases cited above note, stockholder's equity is but one of several factors to consider in setting fair value. The record does not show that the trial court, in resolving the summary judgement motion, considered any factors other than the stockholder's equity set out in the affidavits of Dr. Carter and Mr. Fox or that the court made a specific determination that stockholder's equity was the only factor to be considered under the facts of this case.

We also note that the record shows a genuine issue of material fact with regard to whether Dr. Hubbell owned 20 or 29 percent of the shares of SAA at the time he terminated his employment; the trial court did not resolve this issue.[5] This factual dispute must be resolved before the court can properly determine the fair value of Dr. Hubbell's shares.

## CONCLUSION

For the foregoing reasons, we find the trial court erred in granting summary judgment and remand this case to the trial court for further proceedings in accordance with this opinion.

Costs of appeal are taxed to Appellees, for which execution may issue, if necessary.

_____

RICHARD H. DINKINS, JUDGE

---

[5] The stockholder's equity figure set forth by SAA was based on their assertion that Dr. Hubbell owned 20% of the equity in the corporation.